NEW YORK STATE THRUWAY AUTHORITY, Respondent, v. ASHLEY MOTOR COURT, INC., et al., Appellants.

Third Department, January 24, 1961.

224

*Joseph Worona* and *Milton M. Haven* for appellants.

*Louis J. Lefkowitz, Attorney-General (Julius L. Sackman* and *Paxton Blair* of counsel), for respondent.

HERLIHY, J. The appellants here contend that section 361-a of the Public Authorities Law is unconstitutional in that the section violates the equal protection clause of the Fourteenth Amendment of the Federal Constitution and section 6 of article I of the New York State Constitution by arbitrarily prohibiting some but not all advertising and that the section retroactively deprives the appellants herein of a vested right.

Section 361-a of the Public Authorities Law is part of title 9 having to do solely with the New York State Thruway Authority and subdivision 1 provides for a blanket prohibition against the erection or maintenance of any advertising devices located within 500 feet of the nearest edge of the Thruway pavement unless a written permit had been granted by the Authority.

Subdivision 2 defines "advertising device" as any "device intended to attract or which does attract the attention of operators of motor vehicles on the thruway".

Subdivision 3 gives to the Authority the power to make regulations for the issuance of permits for advertising devices, having in mind the specific objectives and standards so as "(a) To provide for maximum visibility * * * (b) To prevent unreasonable distraction of operators of motor vehicles; (c) To prevent confusion with regard to traffic lights, signs or signals or otherwise interfere with the effectiveness of traffic regulations; (d) To preserve and enhance the natural scenic beauty or the aesthetic features of the thruway * * * (e) To promote maximum safety, comfort and well-being of the users of the thruway."

To carry out the purpose of the section, the Authority is given the further right to take into consideration in making its regulations for the issuance of permits the amount of usage, population density, nature of surrounding communities and other factors and the particular type of device sought to be erected, having in mind its size, design, lighting and other features.

Subdivisions 5 and 6 relate to the applications for permits and renewals as to the form to be used, the fee and other details not pertinent to the issue herein except that part which reads: "Any advertising device erected or maintained after September 1, nineteen hundred fifty-two in violation * * * may be considered a public nuisance subject to removal.

Subdivision 7 gives to the Authority the right to make exceptions as to advertising devices which it finds do not interfere with the above provisions. Several such types of signs are enumerated therein.

Subdivision 8 states that nothing in the section shall apply to property owned or leased by the State of New York.

The Legislature found that the unrestricted or unregulated erection and maintenance of advertising devices along the Thruway would interfere with the welfare of the people of the State.

This case is readily distinguishable from our recent decision in *Schulman* v. *People* (11 A D 2d 273) where the Superintendent of Public Works sought to acquire by eminent domain an

easement pursuant to section 30 of the Highway Law which is a condemnation statute. Here we have a specific statute concerned solely with the New York State Thruway and invoking the police power of the State.

The "Thruway", as it is generally known, is a specially engineered and constructed, divided, controlled access express highway designed for greatest possible visibility and on which vehicular traffic travels at high speed and which would form the basis for the Legislature invoking its police power so as to provide reasonable precautions to insure the safety and comfort of travelers thereon.

Every presumption favors the validity of the statute. Legislative enactments are presumed to be constitutional. (*Wiggins* v. *Town of Somers*, 4 N Y 2d 215.)

The police power of the State invoked and exercised by the Legislature is a flexible, broad, variable process of government intent upon keeping up to date with all of the public and social needs. What would be a violation thereof in prior years might of necessity in an ever-changing world become legal in our present society. Contrariwise, what may have been valid when enacted, as the result of later events might become unlawful. (*Abie State Bank* v. *Bryan*, 282 U. S. 765.) It is the continuance of this sensitivity of balance with which the courts are concerned. Our problem here is limited solely to determining whether the public need is best served by reasonable restriction of advertising signs along a new and modern conception of present day transportation. The State may establish regulations considered to be reasonably necessary to secure the general welfare of the State and its citizens by the exercise of police power although in so doing the rights of private citizens and their property are curtailed and their freedom of contract is abridged or abrogated, but due process demands that such laws be reasonable, not arbitrary, and closely associated with the cause to be corrected. (*Defiance Milk Prods. Co.* v. *Du Mond*, 309 N. Y. 537, 540–541.)

In *Fitzsimmons* v. *New York State Athletic Comm.* (146 N. Y. S. 117) the plaintiff, a former heavyweight prize fighter, sought to enjoin the defendant commission from enforcing an order which prohibited him from boxing in this State. The court in deciding the commission had such authority, at page 121 said: "No matter how comprehensive and elastic the provisions of the fourteenth amendment of the federal Constitution may have been held to be, these provisions do not protect those liberties which civilized states regard as properly subject to regulation by its penal law. * * * The effect of such a law

is to restrict the liberty of those who desire to perform such acts, but if the law is within the police power of the state it cannot be held unconstitutional merely because it restricts the liberty of a citizen by making unlawful acts which were formerly regarded as lawful.   *   *   *   ' Liberty ' is a word with a double meaning. In a negative sense it means freedom from restraint. In a positive sense it secures freedom by the imposition of restraint. It is in this positive sense that the state, in the exercise of its police and general welfare powers, promotes the freedom of all by the imposition of such restraints upon some as are deemed necessary to secure the general welfare.''

In *People* v. *Nebbia* (262 N. Y. 259) the constitutionality of a section of the Agriculture and Markets Law was questioned which provided for a Milk Control Board with power to fix by order the minimum wholesale and retail prices of milk, the violation of which was a misdemeanor. The court in stating that mere novelty was no objection to legislation stated at pages 270, 271: '' Doubtless the statute before us would be condemned by an earlier generation as a temerarious interference with the rights of property and contract (*Matter of Jacobs,* 98 N. Y. 98; *Lochner* v. *New York,* 198 U. S. 45); with the natural law of supply and demand. But we must not fail to consider that the police power is the least limitable of the powers of government and that it extends to all the great public needs; that constitutional law is a progressive science; that statutes aiming to establish a standard of social justice, to conform the law to the accepted standards of the community   *   *   *   are to be interpreted with that degree of liberality which is essential to the attainment of the end in view (*Austin* v. *City of New York* [258 N. Y. 113, 117]); and that mere novelty is no objection to legislation (*People ex rel. Durham Realty Corp.* v. *LaFetra,* 230 N. Y. 429).''

It has been held that the police power can be utilized to prohibit and regulate advertising devices in the interest of public safety. (*Cusack Co.* v. *City of Chicago,* 242 U. S. 526; *St. Louis Poster Advertising Co.* v. *St. Louis,* 249 U. S. 269; *Packer Corp.* v. *Utah,* 285 U. S. 105; *Fifth Ave. Coach Co.* v. *New York,* 221 U. S. 467, affg. 194 N. Y. 19; *City of Rochester* v. *West,* 164 N. Y. 510, 514; *People ex rel. Wineburgh Advertising Co.* v. *Murphy,* 195 N. Y. 126; *People ex rel. Publicity Leasing Co.* v. *Ludwig,* 218 N. Y. 540; *Perlmutter* v. *Greene,* 259 N. Y. 327.) The traditional judicial approach is to equate public safety in regard to the billboard with fires, harboring of criminals (*Cusack Co.* v. *City of Chicago, supra*), and structural defects causing potential collapse and injury to passersby (*City of Rochester* v. *West,*

*supra*). However, the *Fifth Ave. Coach* and *Perlmutter* cases have recognized that public safety and the billboard may also be equated with public use of the highway. In the *Fifth Ave. Coach* case the Supreme Court upheld the validity of a New York City ordinance prohibiting the use of the outside of busses for advertising. The direct holding was predicated upon the fact that the busses were existing under an express grant by the State—"it cannot be contended that a State granting a charter may not strictly define and limit the uses of the property necessary to the exercise of the powers granted." (p. 482). In dicta, the court strongly implied that even if the concept of "charter grant" be disregarded, the prohibitive ordinance would still be valid as a proper exercise of the police power. (See, also, *Railway Express* v. *New York,* 336 U. S. 106.)

In the *Perlmutter* case the Superintendent of Public Works was held to have reasonably exercised his discretion for the benefit of public travel in screening a billboard at a dangerous curve "when by its enormity such a structure may divert the attention of the motorist from the road." (p. 334).

*Triborough Bridge & Tunnel Auth.* v. *Crystal & Son* (2 N Y 2d 961) relied upon by the appellants, is not controlling as to the issues now before this court. The issue there decided was that the law as passed by the Legislature referred to signs in relation to a bridge project which was afterward abandoned and in its place was built a tunnel and the court held that the act of the Legislature referring to a bridge could not by statutory construction be made applicable to a tunnel built in its stead. Section 569-b of the Public Authorities Law which governed that case is not analogous to 361-a, with which we are here concerned.

There can be no doubt that regulation of automobile traffic to promote safety on the highways of this State is today a matter of great public concern. With constant reminders of the numbers killed and maimed each year, it is a matter of utmost importance. The provisions of the Vehicle and Traffic Law, amended periodically to keep pace with the ever-changing traffic conditions, would have been found to be arbitrary and unreasonable 50 years ago and before the advent of automobiles in great numbers.

In *Hadacheck* v. *Los Angeles* (239 U. S. 394, 410) the court said: "There must be progress, and if in its march private interests are in the way they must yield to the good of the community".

The present action is distinguishable from many of the cited cases in that the State herein seeks to control property along the

Thruway for a certain distance on each side thereof and for which it does not intend to pay compensation.

We are satisfied there existed a necessity which justified the Legislature's invoking its police power in the enactment of section 361-a and that such action was not arbitrary or unreasonable. The Legislature was concerned with the inauguration of a new kind of highway travel and its effect upon the traveling public and which in its opinion required a new look as to the rights and benefits of adjoining property owners.

We first consider the only factual issue, to wit, the conditions under which the sign was placed at the location here questioned. All the parties concede it was placed in its present location in 1958 but the defendants argue that it was first placed on the same property — belonging to defendant Ramapo Land Company, Inc.— in 1937 and relocated to its present location in 1958 at the request of the Department of Public Works. At the trial it was stipulated that the sign was presently located within 500 feet * of the edge of the pavement of the Thruway on lands owned by Ramapo Land Company; that it was maintained by Highways Displays, Inc., and that the subject of the advertisement on the said sign, to wit, Ashley Motor Court, was neither located on nor contiguous to the land on which the sign was erected. It was further stipulated that none of the appellants made application for a permit pursuant to section 361-a nor had any permit been issued by the Authority to the appellants. The lower court found that in 1958 the State acquired title to that part of defendant Ramapo's land where the sign was then located, the acquisition by the State being part of a program to widen Route 17 and towards which the sign then faced. It further found that the present sign was placed on property owned by the same defendant on a new location within 500 feet of the Thruway pavement and that the sign carried the legend

On Exit 14 — Thruway
ASHLEY MOTEL (AAA)

The court further found and determined this to be a new and different sign and we affirm such finding. In 1937 there was no Thruway and that part of the sign which contained a legend with reference to it obviously was not on the sign at that time. Under somewhat similar circumstances it was determined that a relocation of a sign was a violation of a section of the Zoning Ordinance which prohibited advertising signs within 200 feet

---

* L. 1960, ch. 904, eff. April 28, 1960, not controlling here, changed 500 feet to 660 feet.

of an arterial highway within the City of New York. (*City of New York* v. *Seel,* 8 A D 2d 964.)

An analogous situation would be where a person owned land bordering on two city streets. If the frontage on one street where a sign was located were taken for widening the street and the owner then moved the sign to that part of the lot facing the other street but which street had been zoned against signs, the owner would not have a right to maintain the sign in violation of the Zoning Ordinance.

The argument that appellants are being deprived of a vested property right without due process of law is not available to them because their sign was erected after the effective date of the statute. Relocating is the same as erecting.

Subdivision 1 of section 361-a not only applies to the erection of advertising devices but also *maintenance of such devices.* The owners have been enjoined from maintaining this sign without obtaining a permit as required by the section.

While the section is comprehensive and contains many and variable terms and conditions, the intents and purposes it seeks to control are within the scope of police power.

The appellants contend that the section is arbitrary because of (1) the exclusionary power given to the Authority pursuant to subdivision 7 and (2) article 5 of the Authority's rules and regulations which define certain exempt areas where signs may be erected.

Subdivision 7 of section 361-a gives the Authority the right to exclude from coverage under the section certain devices which it finds do not interfere with safety on the Thruway or contravene any of the other standards enumerated therein. Article 5 sets forth the rules and regulations adopted by the Authority and provides in part that no advertising device may be erected or maintained without a written permit or exception therefor granted by the Authority. Even if in certain areas a permit is not required in the first instance, if the sign is found to be in violation of the general purposes of the act, it is thereafter subject to the rules and regulations of the Authority.

The very wording of the two questioned provisions seems to defeat the argument of the appellants. It is not the intent or purpose of the section or its rules or regulations to deny the right to have signs within the prescribed areas but to require the obtaining of a permit so as to regulate the use and maintenance of signs erected thereon. Advertising devices which indicate the name and address of the lessee or occupant of the land or which indicate that the property is for sale or lease are proper only if the Authority finds they do not interfere with

safety on the Thruway or contravene any of the specific statutory standards; and it further provides that certain areas may be exempt only if the Authority finds the existence of the signs in the area will not affect the public safety or contravene the statutory standards. The determination as to the right to erect and maintain any such sign is made following an application for a permit. Certain standards are provided in the rules and if a denial of a permit is made by the Authority, it would be necessary and incumbent upon it to state specifically the reasons for its refusal.

The appellants have made no such application for a permit and accordingly have no reason to claim discrimination. (*People v. Calvar Corp.*, 286 N. Y. 419, 421.) They have offered no proof that signs exist in exempt areas or as to any other claims of discrimination. The burden of proof is on the one attacking the statute as unconstitutional. (*Harman v. Board of Educ.*, 300 N. Y. 21; *Lincoln Bldg. Associates v. Barr*, 1 N Y 2d 413; *Queenside Hills Co. v. Saxl, Comm. of Housing and Bldgs. of the City of New York*, 328 U. S. 80, 84, 85.)

In *Cusack Co. v. City of Chicago* (242 U. S. 526, 530) the court said: " The claim is palpably frivolous that the validity of the ordinance is impaired by the provision that such billboards may be erected in such districts as are described if the consent in writing is obtained of the owners of a majority of the frontage on both sides of the street in any block in which such billboard is to be erected. The plaintiff in error cannot be injured, but obviously may be benefited by this provision, for without it the prohibition of the erection of such billboards in such residence sections is absolute. He who is not injured by the operation of a law or ordinance cannot be said to be deprived by it of either constitutional right or of property."

While advertising devices are usually erected on private property, their real value is the close proximity of the sign to the highway and which attracts the attention of the public to the advertisement thereon. That is what the advertiser pays for. Regulation of such signs, under the circumstances herein, is a fair basis for invoking the police power in the best interest of the safety of the traveler. There is an inseparable relationship between the advertising device on private property and its effect upon the user of a nearby highway. The public benefit which flows from such regulations is sufficient compensation for whatever restriction is imposed upon the owner of the adjoining private property as outlined in the section. The purpose of building a highway is not to increase the monetary value of the adjoining property. If such was the fact, then it could be

claimed that property owners along the Thruway, who have no access thereto, have been deprived of a substantial right. What the State is attempting to do here may well be referred to as zoning lands along the Thruway by special act of the Legislature. In the interest of the welfare of the general public the contiguous property is being restricted without the payment of compensation. The applicable rule was well stated in *Higbee* v. *Chicago, Burlington & Quincy R. R. Co.* (235 Wis. 91, 99): "If in the prosecution of governmental functions it becomes necessary to take private property, compensation must be made. But incidental damages to property resulting from governmental activities, or laws passed in the promotion of the public welfare, are not considered a taking of the property for which compensation must be made."

We find the appellants' contention that subdivision 7 of section 361-a and article 5 of the rules and regulations thereto are unconstitutional is unwarranted and make the affirmative finding that the section is constitutional. With the passage of the law there was provided a separability clause so that if some provision should be held invalid, the validity of the remainder would not be affected thereby. (*People ex rel. Ferguson* v. *Reardon,* 197 N. Y. 236, 248.) The judgment should be affirmed.

BERGAN, P. J. COON, GIBSON and REYNOLDS, JJ., concur.

Judgment affirmed, without costs.