76 N.J. Super. 301 (1962)
184 A.2d 441
UNITED ADVERTISING CORPORATION, PLAINTIFF,
v.
BOROUGH OF METUCHEN AND IRVING T. WOERNER, BUILDING AND ZONING INSPECTOR, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided September 17, 1962.
*302 Mr. Martin J. Loftus for the plaintiff (Miss Marilyn H. Loftus, attorney).
Mr. Robert F. Moss for the defendants.
CONVERY, J.C.C. (temporarily assigned).
This is an action in lieu of prerogative writs wherein plaintiff challenges the validity of the defendant borough's zoning ordinance which prohibits off-premise outdoor advertising signs throughout the entire community. The determination sought is that the absolute prohibition, as applied to the business and manufacturing districts, is unreasonable.
Plaintiff United Advertising Corporation is engaged in the business of erecting, maintaining and leasing standard outdoor *303 advertising signs. On or about December 4, 1959 it applied to Metuchen's building inspector for a permit to erect two billboards. Both were to be located on land owned by the Pennsylvania Railroad and leased to plaintiff. Billboard #1 was proposed to be erected in the B-1 business district and billboard #2 in the M-1 manufacturing district. Metuchen's zoning ordinance prohibited the use of outdoor advertising signs throughout the entire borough which do not advertise business conducted on the premises, services rendered on the premises, and/or products offered for sale on the premises. Accordingly, the applications were denied, and plaintiff commenced this in lieu proceeding challenging the validity of those sections of the ordinance which so restrict the erection of billboards and seeking an order requiring the issuance of the permits to it. Defendant's answer admitted all of the allegations in the complaint except those appearing in paragraphs 7 and 8, which contend:
"7. The refusal to issue the permit was arbitrary, unreasonable, and discriminatory.
8. Article VII, Section 1 (g) and those phases of Article IX, Section 1, which prohibit billboards in those districts except to advertise the business conducted on the premises, services rendered on the premises, and/or products offered for sale on the premises are invalid and unconstitutional; violate the equal protection clause of the Federal Constitution; constitute an unreasonable, arbitrary and discriminatory exercise of the police power; bear no reasonable relation to the police power under the Municipal Home Rule Act; are not authorized by the police power or any valid law of the State of New Jersey."
Defendant's motion for summary judgment was granted, but on appeal the matter was reversed and remanded to this court to the end that evidence be taken to determine whether "under the particular facts and circumstances existing in the business and manufacturing districts of Metuchen, the manner and method in which its signs are to be erected and maintained and the resulting benefits redounding to the community at large, the specific prohibitory features of the ordinance here challenged constitute an improper exercise of *304 police power and are arbitrary and unreasonable." United Advertising Corp. v. Metuchen, 35 N.J. 193, 196 (1961).
On April 17, 1962 Metuchen's zoning ordinance was amended and the following are its pertinent provisions:

"ARTICLE I
* * *
Section 2. Definitions
* * *
ADVERTISING SIGNS  A sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than on the lot where the sign is located.
* * *

ARTICLE XII
Signs
Section 1: * * *
C. Advertising Signs. No advertising signs shall be permitted in any district in the Borough of Metuchen."
Both counsel agree that the amendment does not alter the issues here involved. However, the effect of this decision will bear upon the ordinance adopted on April 17, 1962, for it is fundamental that "[t]he zoning ordinance in effect at the time the case is ultimately decided is controlling." Hohl v. Readington Tp., 37 N.J. 271, 279 (1962).
The Legislature is empowered by our Constitution to enact general laws pursuant to which municipalities may adopt zoning ordinances "limiting and restricting to specified districts and regulating therein, buildings and structures, according to their construction, and the nature and extent of their use, and the nature and extent of the uses of land, and the exercise of such authority shall be deemed to be within the police power of the State." N.J. Const. Art. IV, Sec. VI, par. 2. Municipalities were granted extensive power to create districts and regulate structures and the use of land therein through zoning by R.S. 40:55-30, 31. But the power must be exercised to accomplish one of its legitimate aims, i.e., the statutorily stated purposes set forth in R.S. 40:55-32, which provides:
*305 "Such regulations shall be in accordance with a comprehensive plan and designed for one or more of the following purposes: to lessen congestion in the streets; secure safety from fire, panic and other dangers; promote health, morals or the general welfare; provide adequate light and air; prevent the overcrowding of land or buildings; avoid undue concentration of population. Such regulations shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of property and encouraging the most appropriate use of land throughout such municipality."
Judicial review of a zoning ordinance is limited. The court may not interfere unless the presumption in favor of its validity is overcome by affirmative proofs that it was not adopted to accomplish one of the legitimate aims for which the power was granted. Vickers v. Tp. Com. of Gloucester Tp., 37 N.J. 232 (1962).
Plaintiff urges essentially two grounds to support its contention that the ordinance is unreasonable, arbitrary and unconstitutional: (1) there exists no reasonable basis upon which legitimate constitutional classifications may be formulated which would distinguish, and therefore permit, different treatment of on-premise outdoor advertising and off-premise outdoor advertising; and (2) the absolute prohibition of off-premise outdoor advertising in the business and manufacturing districts of Metuchen has no legal justification in fact and is accordingly unreasonable, arbitrary and unconstitutional.

I.
As to plaintiff's first contention that the ordinance's classification is unconstitutional, the law in this State would appear to be to the contrary. In United Advertising Corp. v. Raritan, 11 N.J. 144 (1952), the same ground was urged as to the invalidity of the ordinance there in question. In answer to that contention, the Raritan court said "that [off-premise] outdoor advertising has characteristic features which have long been deemed sufficient to sustain regulations *306 or prohibitions peculiarly applicable to it." United Advertising Corp. v. Raritan, supra, at p. 151. See also Bd. of Com'rs, Ridgefield Park v. A.S. Pater Realty Co., 73 N.J. Super. 155 (Ch. Div. 1962). Metuchen's ordinance would therefore seem to possess no constitutional infirmity in this regard.
It is clear that the Raritan case sustained the power of a municipality through its zoning to regulate outdoor advertising. This, plaintiff does not dispute. What is put in issue, however, is the reasonableness of the regulations. The thrust of plaintiff's position is that the particular facts and circumstances existing in Metuchen's business and manufacturing districts, considered with the nature of plaintiff's business, its method of operation and its effect upon the community, make unreasonable and arbitrary the prohibition found in the ordinance. This necessitates an inquiry into the character of Metuchen and, in particular, the districts involved; the zoning end sought to be accomplished by the restriction; and the private rights affected.

II.
As to this issue of reasonableness, the problems framed by the testimony adduced before me are primarily these: (a) would off-premise outdoor advertising signs in the manufacturing and business districts, by their effect on vehicular traffic, produce safety hazards; and (b) would off-premise outdoor advertising signs in the manufacturing and business districts be detrimental to the general welfare of the community.

A.
As to the safety problem, the expert testimony was authoritative and well documented. Dr. Leonard Strulowitz, a licensed optometrist of the State of New Jersey and an active participant in a committee on traffic safety formed by *307 the New Jersey Board of Trustees of Optometrists, testified that roadside outdoor advertising signs were actually a stimulus to the driving public. He said that long stretches of monotonous highway driving tended to "lull" the driver and cause a phenomenon known as "highway hypnosis." In that condition the automobile operator is actually not consciously aware of what he is doing and is thus a danger to the safety of others. Roadside signs act as a stimulus which keep his brain busy and his mind alert. Although the road in question probably would cause little, if any, "highway hypnosis," Dr. Strulowitz could not "conceive of any situation in which the stimuli * * * such as road signs, would not be beneficial." With respect to the signs and locations involved here, based upon his own personal knowledge of the areas, Dr. Strulowitz concluded that the signs would in no way be detrimental to safe driving.
J. Carl McMonagle, a civil engineer, supervised a field study conducted by the Planning and Traffic Division of the Michigan State Highway Department. The project was carried out at the request of the Bureau of Public Works, Division of the U.S. Department of Commerce, and The National Safety Council, its purpose being according to McMonagle, "to determine in what way each roadside feature, whether it be a driveway, tavern, store, a sign, or other feature studied, contributed in any way to accidents." The survey was conducted on about 70 miles of U.S. Highway 24. This road was selected because it possessed nearly every type of land use and roadside feature, and the effect of each of these factors on traffic safety could be, and, ultimately was, analyzed and measured. The report concluded that roadside signs, whether on- or off-premise, had no effect on traffic safety. Based upon his personal investigation of Metuchen, McMonagle felt that these results were applicable to its business and manufacturing districts because of their similarity to a portion of U.S. Highway 24, and, further, that the erection of the two outdoor standard poster signs at the locations in question would not cause traffic hazards.
*308 In addition to his supervision of the Michigan report, he also collaborated with Dr. Lauer on an article entitled "Do Road Signs Affect Accidents?" which appeared in the July 1955 Traffic Quarterly. Dr. Lauer is a Professor of Psychology and Director of the Driving Laboratory at Iowa State College. He had conducted a laboratory investigation of the effect of advertising signs on traffic accidents to determine whether it would confirm the Michigan field study supervised by McMonagle. The article referred to above is a fusing of the two studies and concludes that "there is no significant relationship shown between outdoor advertising signs and highway accidents. The evidence, if any, is slightly in favor of having something along the highway to arouse the motorist and keep him alerted as far as efficient driving is concerned." Traffic Quarterly, July 1955, p. 329. See also by Dr. Lauer, The Psychology of Driving (1960).
Dr. Ernest C. Blanche, a statistician, offered expert testimony with respect to the Michigan survey. He contended that the statistical method used in that report to analyze the cause and effect relationship between roadside features and highway accidents is scientifically accurate. Utilizing that procedure one can measure precisely the effect of one feature or a group of features on traffic accidents. Based on his study of the report Dr. Blanche concluded that its results are definite mathematical proof that there is no positive relationship between advertising signs and accidents.
The evidence on the safety issue was uncontroverted. It has persuaded me, and accordingly I find, that outdoor advertising signs would constitute no safety hazard in the business and manufacturing districts of Metuchen.

B.
Metuchen's contention as to the problem of the general welfare is grounded upon the character of the community. The borough's area is 2.9 square miles. It may roughly be divided into quadrants in the following manner: Main Street *309 runs in a generally north-south direction and the Pennsylvania Railroad in a generally east-west direction. These two arteries, of course, cross and thus divide Metuchen into four sections. The business districts are situated largely in the center of the town and the manufacturing district is located generally in the northwest and southwest sections. The business districts have a diversity of uses; e.g., parking lots, gasoline stations, automobile sales, food markets, real estate offices, residences which have been converted into commercial and professional uses, and funeral homes. The manufacturing district is largely vacant land or utilized for agricultural purposes. Only a small portion of it is crossed by major streets.
Metuchen is serviced by two railways: the Pennsylvania which, as noted above, runs in a generally east-west direction, and the Lehigh Valley which crosses it from northwest to southeast. The community for the most part is a residential one and, in fact, this is the essence of defendant's position. Metuchen contends that it is reasonable for a municipality about 85% residential to exclude off-premise outdoor advertising signs, for in so doing the high quality of land use is maintained.
The purposes and criteria of valid zoning as laid down by our Legislature in R.S. 40:55-32 are set forth above. However, it has been stipulated between the parties that the proposed billboards "would not prevent adequate light or air from getting to any surrounding buildings or dwellings * * * would not cause overcrowding * * * would not decrease the property value of land in the Borough of Metuchen * * * would not produce objectionable noise, vibration, odor, smoke, gas, glare, offensive or radioactive waste materials or effluent" and would not conceal immoral acts. It was further agreed that "the business and manufacturing character of the said districts in Metuchen would not be changed by the erection of the proposed billboards." These agreed upon points do much to allay any fears Metuchen may have that its highly residential character *310 would be jeopardized by the presence of plaintiff's signs at the proposed locations. Indeed, as applied to these sites, the prohibition may be without legitimate basis and unreasonable. But plaintiff is not here seeking relief in the nature of a variance or a special exception. The scope of its attack goes to the constitutionality of the ordinance in toto as applied to the business and manufacturing districts, and "[o]rdinarily the invalidity of an ordinance as to a small parcel will not vitiate the treatment of the entire district within which it is situated." Kozesnik v. Montgomery Twp., 24 N.J. 154, 183 (1957); Fischer v. Bedminster Tp., 11 N.J. 194, 205 (1952); Fanale v. Hasbrouck Heights, 26 N.J. 320, 324 (1958). Thus the inquiry precipitated by plaintiff's challenge should not be confined merely to the two proposed locations, but must be at least as broad as the business and manufacturing districts in their entirety.
It is clear that outdoor advertising is a legitimate business, United Advertising Corp. v. Raritan, supra, and is so recognized by our Legislature, N.J.S.A. 54:40-50 et seq. It is generally conceded to be the medium that can expose an advertising message to more people, more often, for less money than any other. The testimony reveals that its primary function is to accelerate "the fulfillment of desires, and in doing so it provides mass distribution which is essential in our economy with mass production, and it is a means of speeding up the movement of the product to the consumer." When an individual responds to the message his purchase is, of course, made at a store in some community. For this reason all advertising is directed to local community purchasing. Plainly, this could contribute in some measure to the economic betterment of any community in terms of tax revenue and employment.
It was further testified that outdoor advertising is related to the social betterment of communities. Advertising "space" is contributed to the State of New Jersey to promote safety campaigns; to the New Jersey Education Association to promote public understanding of the schools and *311 teacher recruitment problems; to the Red Cross, to 4-H Clubs, to the Girl Scouts, to Crippled Children appeals, to Cerebral Palsy, to Multiple Sclerosis, and many other organizations dedicated to and working for the social good. The evidence in these areas of social and economic betterment persuasively shows that outdoor advertising could have some definite and useful role in the affairs of community life. However, each municipality need not provide for every use which, in the abstract, may be potentially beneficial and zoning regulations may be sustained on the broad concept of "general welfare" if it "is reasonably calculated to advance the community as a social, economic and political unit" Vickers v. Tp. Com. of Gloucester Tp., supra, at p. 247.
Sound zoning requires that local officials anticipate the long range needs of the future as well as those of the present and the immediately foreseeable future. Vickers v. Tp. Com. of Gloucester Tp., supra. However, plaintiff contends that the exclusion did not result from any rational process and was not designed to accomplish a legitimate end in accordance with a comprehensive plan, in that no attention was given to it in the master plan. But "a plan may readily be revealed in an end-product  here the zoning ordinance  and no more is required * * *." Kozesnik v. Montgomery Twp., supra, at p. 166. If a prohibition as an integral part of a zoning ordinance is reasonably calculated to meet or anticipate the needs of the total community its absence from the master plan is of little moment.
As noted above, Metuchen is largely residential, with only limited areas zoned for business and manufacturing. It is urged that sound planning for this community requires that its highly residential character be maintained. Nearly every artery leading into Metuchen reflects the high quality of the land use, and the plans for the future include high quality industrial developments, upgrading the quality of stores, and development of quality shopping areas which would provide merchandise "appealing to the higher level income clientele." Considering Metuchen in its entirety, the *312 prohibition of off-premise advertising signs does not appear to be arbitrary or unreasonable. Certainly a community of this character, to promote the general welfare, may plan to retain through zoning the high quality of its land use. To this end Metuchen has made a legislative judgment that the purposes of R.S. 40:55-32 would be served, inter alia, by the exclusion of off-premise advertising signs throughout the entire community. In my opinion, its size, the nature of its land uses and its plans for the future form a reasonable basis for that judgment and therefore this court may not interfere.
Thus, I conclude that the prohibition found in the ordinance is not unreasonable and must remain undisturbed. An appropriate order may be submitted.