Norate Corporation, Inc., Appellant, *v.* Zoning Board of Adjustment.

Argued November 26, 1963, decided January 21, 1964, opinion subsequently withdrawn and reargument ordered; reargued October 5, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Bernard J. Avellino,* with him *Fred J. Silverman,* for applicant, appellant.

*H. Lyle Houpt,* for Board of Commissioners, appellee.

*D. Stewart McElhone,* with him *Duffy, McTighe & McElhone,* for intervenors, appellees.

OPINION BY MR. JUSTICE JONES, March 16, 1965:

On June 2, 1939, Upper Moreland Township (Township), Montgomery County, adopted a zoning ordinance which was later amended, revised and reenacted in 1955 and 1960. On September 8, 1959, the Township adopted an ordinance (No. 394) known as the "Sign Regulations" Ordinance[1] (Sign Ordinance). This Sign Ordinance regulates signs, billboards, marquees and street clocks and makes it unlawful "to erect, repair, alter, relocate or maintain" any "sign or other advertising structure", as defined in the ordinance, *anywhere in the Township,* without first securing an "erection permit" and paying a stipulated fee. Exempt from this ordinance are "on-site" real estate signs, professional name plates of a certain size, public, charitable or religious institutions' "on-site" bulletin boards of a limited size, temporary construction signs of a limited size, occupational signs, memorial signs or tablets, traffic and municipal signs.

Prior to November 13, 1962, §3(b) of the Sign Ordinance read as follows: "Signs or any other advertis-

---

[1] Norate notes in its brief: ". . . the provisions of the Sign Ordinance were actually incorporated in the Zoning Ordinance, and were removed and placed in a separate Ordinance simply in the interest of clarity". Section 1004 of the Zoning Ordinance provides: "Signs shall be permitted in accordance with the [Sign Ordinance], and Section 1113 of this Ordinance." Section 1113 provides: "No more than one (1) sign shall be erected on any building except if any property fronts on more than one street, one sign may be erected facing each street frontage and further, one (1) additional sign may be erected on any property facing a parking lot situate on said property."

ing structure . . . are not permitted except those advertising that which is handled, sold or manufactured on the premises." On November 13, 1962, §3(b) was amended (by Ordinance No. 492) as follows: "With the exception of signs advertising motels located within the Township, signs are not permitted except those advertising that which is handled, sold or manufactured on the premises. By special exception of the Zoning Board of Adjustment, motels shall be permitted two signs on properties other than the motel site, such signs are restricted to the industrial area along the Pennsylvania Turnpike."

Norate Corporation, Inc. (Norate), owns premises on North Easton Road upon which it operates a motel called "Fiesta Motor Inn". After passage of the amendment to §3(b), Norate applied thereunder for a special exception to install two metal signs,—10' high, 24' wide and illuminated by floodlights—, advertising the motel. One sign was to be installed on the property of one Piunti, facing the Pennsylvania Turnpike (Turnpike),—five-eighths of a mile from the point at which the Turnpike intersects Easton Road—and the other sign was to be installed on the property of one Goodman, facing the Turnpike,—at the point where the Turnpike intersects Easton Road.

After a public hearing, the zoning board of adjustment (Board), denied a special exception on two grounds: (a) that the proposed use would adversely affect the health, safety, morals or general welfare of the community and (b) that the amendment to §3(b) (Ordinance No. 492) was invalid because it was "unreasonably discriminatory" and bore no reasonable relationship to the health, safety, morals or general welfare of the community. An appeal was taken to the Court of Common Pleas of Montgomery County. Hankin Realty Corp., a motel operator in competition with Norate, and the Sycamore Civic Association,

Inc. were permitted to intervene.[2] The court remanded the matter to the Board for the making of findings of fact and conclusions of law. Thereafter, upon return of the matter to the court, the court found that the evidence did not support the Board's findings and conclusions that the signs would adversely affect the community but declared the amendment to §3(b) was invalid in that it was unreasonably discriminatory. From the order affirming the Board's denial of the special exception, Norate has appealed.

Norate has three contentions: (1) neither Sycamore, Hankin, the Board nor the Township has any standing in this proceeding; (2) that the amendment of §3(b) of the Sign Ordinance is valid; (3), that, even if the amendment to §3(b) is invalid, the Sign Ordinance itself is invalid as an improper exercise of the police power of the Township.

As to Norate's initial contention, it is clear that the Board has no standing: *Lansdowne Borough Board of Adjustment's Appeal*, 313 Pa. 523, 170 A. 867; *Perelman v. Yeadon Borough*, 144 Pa. Superior Ct. 5, 18 A. 2d 438. However, the Township certainly has standing. As the Superior Court stated in *Perelman*, supra (144 Pa. Superior Ct. at 7): "The [municipality], as a collective representative of all residents and property owners, is undoubtedly interested in the enforcement of the regulations contained in the ordinance." See: *Schechter v. Zoning Board of Adjustment*, 395 Pa. 310, 316, 317, 149 A. 2d 28; *Edwards Zoning Case*, 392 Pa. 188, 192, 140 A. 2d 110. If Norate were correct in this respect, no party would have any standing to oppose Norate's position. Such is neither the law nor consonant with common sense.[3]

---

[2] It later developed that the members of this Association were not affected by the installation of the signs.

[3] In view of the fact that the Township has standing, we need not determine whether either or both Hankin and/or the Associa-

Norate next contends that the amendment to §3(b) is valid and that the court (a) lacked the power to declare this ordinance invalid and (b) erred in determining such ordinance invalid. The court below did have the power to pass upon the validity of this amendatory ordinance. The record reveals the validity of the ordinance was raised before and passed upon by the Board. However, regardless of whether such issue was raised, the court below, even without taking additional testimony, had the power to consider and decide this question: *Eller v. Board of Adjustment,* 414 Pa. 1, 5, 198 A. 2d 863.

The court below held invalid the amendment to §3(b) because of lack of uniformity in its operation. The court said: "Ordinance 492 authorizes an exception to its sign regulation, which exception is restricted to advertising by motels in the 'industrial area along the Pennsylvania Turnpike.' Thus, (1) businesses other than motels, and (2) the owners of all other industrially zoned property in the township are discriminated against. 'Zoning ordinances must be uniform throughout the district. This is of great importance as it affects not only the reasonableness *but* the validity of the ordinance.'

. . .

" 'There can be no discrimination against those of the same class, and if they are intended as regulations they must apply to all of a class.' Coane v. City of Philadelphia, 16 D. & C. 159, 160 (1931)."

Moreover, Ordinance No. 492 is invalid for another reason, i.e., the absence of any standard or standards to be applied by the Board in the granting or refusal of a special exception under the ordinance.

---

tion possess standing. Moreover, while Norate argues for the validity of the amending ordinance, it does argue that the Sign Ordinance is invalid. Under the circumstances, the Township occupies no anomalous position in the case at bar.

In our examination of the record we note that neither the Board nor the court below made any reference to the standards to be applied by the Board in determining whether or not a special exception should be granted. Having taken judicial notice of the provisions of the ordinance,[4] we note that §3A thereof provides: "When granting special exceptions, the Zoning Board of Adjustment may determine such restrictions and provisions as they may deem necessary." Except for §3A, the ordinance makes no reference whatsoever to any guidelines or standards which shall be considered by a board in the grant or refusal of a special exception. It is surprising, to say the least, to find in an ordinance adopted as late as 1959 such an unlimited and unfettered delegation of power to a quasi-judicial body. Such an attempt to bestow an arbitrary discretion upon the Board is, of course, improper. See: *Dooling's Windy Hill, Inc. v. Springfield Township,* 371 Pa. 290, 294, 89 A. 2d 505; *Devereux Foundation, Inc. Zoning Case,* 351 Pa. 478, 483, 41 A. 2d 744; *Archbishop O'Hara's Appeal,* 389 Pa. 35, 47, 131 A. 2d 587.

As this Court pointed out in *Archbishop O'Hara's Appeal,* supra (389 Pa. at 51, 53), the authority of a zoning board to act arises exclusively from the ordinance and the enabling statute and the language of both demarcates the jurisdiction of the board. Under the language of the instant amending ordinance, the Board's jurisdiction is limited to the grant or the denial of special exceptions but the ordinance provides no standards in conformity with which the Board must exercise its discretion. Absent such standards this Board was constitutionally powerless to act, it could

---

[4] We take judicial notice of the ordinance of first class townships by virtue of the Act of April 8, 1941, P. L. 16, §1, 28 P.S. §301. See: *Thompson v. Philadelphia Transportation Co.,* 357 Pa. 3, 53 A. 2d 120.

not have granted the application for a special exception and its denial thereof must be affirmed.[5]

Norate argues that the standards to guide the Board are to be found in the zoning ordinance originally adopted in 1939 and points out the similarity of the standards therein contained to those which we upheld in *Archbishop O'Hara's Appeal,* supra. The inherent difficulty in Norate's position in this respect is that the zoning ordinance and the Sign Ordinance are separate and distinct legislative enactments and the lack of standards in the latter cannot be sustained by reason of the presence of standards in the former. For these several reasons, Ordinance No. 492 is invalid.

Lastly, Norate argues that the Sign Ordinance (No. 394) is invalid in that it constitutes an improper exercise of the Township's police power.

Ordinances dealing with the regulation of signs, billboards and other outdoor advertising media have been held, on many occasions, within the police power of a municipality. "Specifically, billboard ordinances and regulations, where reasonable, are justified under the police power for any or all of the following reasons: (1) billboards being temporary structures are liable to be blown down and thus injure pedestrians; (2) they gather refuse and paper which may tend to spread conflagrations; (3) they are used as dumping places for dirt, filth and refuse, and as public privies; (4) they serve as hiding places for criminals; and (5) they are put to use by disorderly persons for immoral purposes. Moreover, as is well known, billboards placed at certain locations, as at corners or curves, may obstruct the vision of drivers and thereby constitute a traffic menace, and the promotion of safe-

---

[5] That the presence of proper standards is most important in determining the propriety of the grant of special exceptions, see: 36 Temple L.Q. 298.

ty on public highways certainly is justification for a billboard regulation reasonably related thereto." 7 Mc-Quillin, Municipal Corporations (3rd. ed.), pp. 310, 311 and cases therein cited.

In *Walnut & Quince Streets Corporation v. Mills,* 303 Pa. 25, 154 A. 29, we upheld the validity of a statute which conferred upon an art jury the right of approval or disapproval of structures to be erected above highways and restrained a theater owner from erecting a marquee along the front of the theater. In *Liggett's Petition,* 291 Pa. 109, 139 A. 619, we upheld the validity of a zoning ordinance which prohibited billboards over a certain size in districts zoned residential. In *Silver v. Zoning Board of Adjustment,* 381 Pa. 41, 43, 112 A. 2d 84, this Court, recognizing that "the regulation of billboards is generally accepted as a legitimate exercise of the police power by a zoning board", upheld the right of a municipality to prohibit signs to be erected in a "Commercial District" except as an accessory use.[6] To the same effect, see *Landau Advertising Co. v. Zoning Board of Adjustment,* 387 Pa. 552, 128 A. 2d 559, wherein we also held that a zoning ordinance, exempting from a prohibition of signs and billboards any signs or billboards which refer to a business conducted on the property on which they are erected,[7] is not illegally discriminative.

In this area of the law certain principles appear settled: (a) a municipality has the power to regulate signs, billboards and other advertising media provided such regulation is not unreasonable, arbitrary or discriminatory and bears a reasonable relationship to the safety, morals, health or general welfare of the community: *Cusack Company v. Chicago,* 242 U.S. 526, 37

---

[6] "On-site" as contrasted with "off-site" advertising media.

[7] Cf: *Prospect Park Borough v. McClaskey,* 151 Pa. Superior Ct. 467, 30 A. 2d 179; *Pittsburgh Poster Advertising Co. v. Swissvale Borough,* 70 Pa. Superior Ct. 224.

S. Ct. 190; *St. Louis Poster Advertising Co. v. St. Louis,* 249 U.S. 269, 39 S. Ct. 274;[8] (b) the "unique nature of outdoor advertising and the nuisance fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulations and restriction": *United Advertising Corp. v. Borough of Raritan,* 11 N.J. 144, 93 A. 2d 362; *National Advertising Co. v. County of Monterey,* 27 Cal. Rptr. 136; (c) in the adoption of a comprehensive zoning plan, a municipality may divide the municipal area into districts—residential, commercial, industrial, etc.—and may prohibit or regulate activities as to advertising in areas whose character is not consistent with the use of advertising: *Liggett,* supra; *Silver,* supra; *Landau,* supra; (d) while the tendency is growing to regard with more liberality the police power of a municipality to regulate or prohibit sign advertising, such regulation or prohibition must be neither arbitrary nor discriminatory.

Ordinance 394—the Sign Ordinance—purports to ban and prohibit *all* "off-site" signs advertising *throughout the entire Township* without any regard to districts, size of signs or other considerations. In *Bryan v. City of Chester,* 212 Pa. 259, 61 A. 894,[9] we held "that a municipality had no power to enact an ordinance,—common to a whole city and without regard to particular conditions existing in designated,

---

[8] Aesthetic reasons may not furnish the *sole* basis for regulation: *Liggett,* supra; *Murphy v. Town of Westport,* 131 Conn. 292, 40 A. 2d 177, 179. Chief Judge POUND in *Perlmutter v. Greene,* 259 N.Y. 327, 182 N.E. 5, 6 said: "Beauty may not be queen, but she is not an outcast beyond the pale of protection or respect. She may at least shelter herself under the wing of safety, morality, or decency."

[9] Decided prior to the time zoning was statutorily authorized.

or zoned, districts,—forbidding citizens to erect billboards on their own property . . . ."[10] Granted that our courts now look with more liberality upon a municipality's police power as to sign advertising than when *Bryan* was decided, the rationale of *Bryan* is apposite in determining the validity of the instant ordinance which places a blanket prohibition on all "off-site" sign advertising in the entire municipality. Such an ordinance is too general, too broad and unreasonable.[11]

In our view, the instant ordinance does not attempt to regulate but to prohibit and the prohibition, without any regard for the districts set up under the zoning ordinance, extends throughout the township to all "off-site" sign advertising. Such ordinance is patently unreasonable and invalid.[12]

The Sign Ordinance is invalid as an improper exercise of the Township's police power. Section 3(b), as amended, is likewise invalid because of its discriminatory nature and lack of proper standards to guide the Board in the grant or refusal of special exceptions.

Order reversed.

---

[10] As construed in *Liggett's Petition*, supra, 291 Pa. at 116.

[11] In other jurisdictions courts have held ordinances such as the instant ordinance invalid: *Varney & Green v. Williams*, 155 Cal. 318, 100 P. 867; *Mid-State Advertising Corp. v. Bond*, 274 N.Y. 82, 84, 8 N.E. 2d 286, 287; *Central Outdoor Advertising Co. v. Evendale*, 54 Ohio Op. 354, 124 N.E. 2d 189; *Wolverine Sign Works v. Bloomfield Hills*, 279 Mich. 205, 271 N.W. 823. But see: *United Advertising Corp. v. Metuchen*, 76 N.J. Super. 301, 184 A. 2d 441. See: 58 A.L.R. 2d 1314; 72 A.L.R. 465.

[12] It is of interest that in *N. Y. State Thruway Authority v. Ashley Motor Court, Inc.*, 12 App. Div. 2d 223, 210 N.Y.S. 2d 193, aff'd 10 N.Y. 2d 151, 218 N.Y.S. 2d 640, 176 N.E. 2d 566, the court recently has upheld a statute, having as its objective the safety of the traveling public, which forbids the erection, without permit, of advertising devices or billboards within 500 feet of the New York Thruway.