James J. BEAVER et al., Plaintiffs,

v.

The BOROUGH OF JOHNSONBURG,
a Municipal Corporation, et al.,
Defendants.

Civ. A. No. 95–72 Erie.

United States District Court,
W. D. Pennsylvania.

March 26, 1976.

M. Bruce McCullough, Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for plaintiffs.

Anthony B. Trambley, St. Marys, Pa., for Borough, defendants.

John F. Potter, Erie, Pa., for all other defendants except Penntech.

Raymond G. Hasley, Rose, Schmidt & Dixon, Pittsburgh, Pa., for Penntech.

## OPINION

WEBER, District Judge.

At the commencement of trial of the above action the defendant Penntech Paper Company moved to dismiss on the grounds that the zoning ordinance of the Borough of Johnsonburg and the permit issued under said ordinance could not be constitutionally enforced against Defendant Penntech because the standards of the ordinance were so unconstitutionally vague as to make impossible their application to Penntech Paper Company's operations and furthermore, even if the ordinance was valid, its application to Penntech's pre-existing operations would result in a taking of Penntech's property without due process. It was then determined between the court and counsel that the decision on such motion would require the consideration of a limited amount of evidence. Testimony was received from the principal plaintiff as to the conditions created on his property by the operations of the woodchipping facility installed on defendant Penntech's property in 1965 near plaintiffs' residence. Testimony was also received relating to a noise measurement study of both the operations of the Penntech woodchipper facility and the other ambient noises in the area.

The cause of action asserted in this complaint against the defendants is that a zoning ordinance enacted by the Borough of Johnsonburg in 1965 prohibited the operation of the woodchipper facility on the Penntech property because of excessive noise, dust, and vibrations emitted by such facility. The complaint asserted a cause of action under 42 U.S.C. §§ 1983 and 1985, the Civil Rights Act. It alleged that Penntech, the defendant Borough, and the individual defendants who are members of the Borough Council or its Zoning Board of Adjustment had conspired to violate the plaintiffs' civil rights in the quiet enjoyment of their property by refusing to enforce the zoning ordinance or the conditions of a permit issued thereunder against Penntech.

The history of these properties, developed in prior proceedings before this court, shows that the property now occupied by Penntech Paper Company has been used by this defendant and predecessor paper companies as a paper mill for many years. The plaintiffs' property was once part of the property of a predecessor of Penntech. The woodchipping operations had been conducted for many years on Penntech's land at some distance from plaintiffs' dwelling. In 1965, Penntech transferred the location of the woodchipper facility to an existing industrial building on its property directly across a highway from plaintiffs' residence and installed therein new machinery for the woodchipping operation. The woodchipping operation involves the reduction of large logs into small chips of wood, a necessarily noisy part of any paper-making operation.

In 1965 the Borough of Johnsonburg enacted its first comprehensive zoning ordinance, which included all of the Penntech property and the plaintiffs' property in a zone designated as "Industrial District." Pertinent parts of the zoning ordinance provide:

"ARTICLE II

SUPPLEMENTARY REGULATIONS

SECTION 201. PROHIBITED USES

1. No lot shall be used nor building be erected' altered, or used, for any trade, industry, or business that is obnoxious or offensive by reason of odor, dust, smoke, gas, vibration, illumination, or noise, or otherwise creates a nuisance or

hazard to public health, safety, and welfare. . . ."

"ARTICLE XIII

1—INDUSTRIAL DISTRICT

SECTION 1300. USES.

1. Uses Permitted:

A. Buildings may be erected, altered, or used; and a lot or premises may be used for any lawful purpose as follows:

(1) All uses not otherwise prohibited by law . . .

(2) Any lawful manufacturing or industrial use not otherwise prohibited in this Ordinance.

\* \* \* \* \* \*

3. Uses Prohibited.

A. All uses of land, buildings, and structures, or industrial processes that may be noxious or injurious by reason of the production or emission of dust, smoke, refuse matter, odor, gas, fumes, noise, vibration, or similar substances or conditions provided, however, that any such uses may be permitted if approved by the Board of Adjustment and subject to the securing of a permit therefor and to such conditions, restrictions, and safeguards as may be deemed necessary by said Board for the purpose of protecting the health, safety, morals, and the general welfare of the community."

At or about the time of the adoption of the ordinance, the defendant Penntech had relocated its chipper facility to the building adjacent to plaintiffs' residence. After area property owners complained about the woodchipper facility, the Zoning Board of Adjustment issued a temporary permit with certain conditions under Section 1300(3). This permit ostensibly allowed Penntech to continue an operation otherwise in violation of the zoning ordinance. Plaintiffs' predecessor in interest appealed from the granting of this permit to the Court of Common Pleas of Elk County. That court ruled in 1966 that the issuance of a permit under Section 1300(3) was premature until the conditions required by the permit had been met. The Zoning Board of Adjustment, at a subsequent meeting, determined that all of the modifications required by its previous permit of June 27, 1966 had been complied with by Penntech and, further, that the woodchipping operation was not then a nuisance or hazard to the public health, safety, and welfare. Thereupon the Board issued a second permit with several conditions for the woodchipper's operation. By its terms the permit would be effective until further order of the Board and would be subject to continued review by the Board.

The critical portion of this Ordinance is Section 1300, Subsection 3 prohibits uses of land that may be noxious or injurious to the community by the production or emission of dust, smoke, refuse matter, odor, gas fumes, noise, vibration, or similar substances or conditions. However, the Board of Adjustment may permit such prohibited use with such conditions deemed necessary by the Board to protect the health, safety, morals, and the general welfare of the community. The Ordinance prohibits certain uses of the land and then gives the Board of Adjustment authority to permit such prohibited uses. The subsection contains no standards for determining whether a permit should be granted. This problem is further complicated by the fact that the permit in question was issued by the Board of Adjustment in 1966 and that members of the Borough Council and its Board of Adjustment who were in office only from and after 1972 are charged here with failing to enforce the conditions of the permit or the terms of the ordinance. The present individual defendants could have no knowledge of the standards applied by the 1966 Board because there were none in the ordinance.

That standards by which noise conditions may be measured is established by the testimony of the witness Kerstetter, an employee of the Bureau of Air Quality and Noise Control of the Department

of Environmental Resources of the Commonwealth of Pennsylvania, who conducted studies of noise intensity at various locations around the properties concerned. Kerstetter's testimony established that the noise emissions from the chipper operation were of no greater severity than ambient noise from other conditions in the area, such as the public highway immediately fronting plaintiffs' property, which divides the plaintiffs' property from the chipper facility in question, or the elevated railroad tracks alongside plaintiffs' property.

Furthermore, plaintiffs' property is included in the industrial zone and is therefore itself a non-conforming use. All of the testimony as to noise and dust related to the conditions on the plaintiffs' property within the industrial zone. No testimony involved the levels of noise or dust from the paper mill affecting non-industrial zones of the community. The intent of the ordinance in confining industrial uses of property to a limited area could only be to protect other parts of the community set aside for residential or commercial uses.

From this we conclude that the plaintiffs may lack standing to complain of levels of noise, vibrations or dust which would be acceptable within an industrial zone, because their own property is located within the industrial zone. Should property owners located in a residential area complain of violations, the applicable measurement would be the level of noise only as it affected those outside the industrial zone.

That a zoning ordinance, or any other ordinance regulating or restricting the use of one's property, must contain certain and definite standards for its application to a particular property, and also for the use of any regulatory body vested with discretion in its enforcement, has been established by a number of cases.

In *Norate Corporation v. Zoning Board of Adjustment*, 417 Pa. 397, 207 A.2d 890 [1965], the Pennsylvania Supreme Court held that a zoning ordinance prohibiting signs but permitting the zoning board of adjustment to grant special exceptions "as they may deem necessary" gave the Board such an unlimited and unfettered power as to render the special permit provision invalid.

"Absent such standards this Board was constitutionally powerless to act, it could not have granted the application for a special exception . . . ." 207 A.2d at p. 894.

Similarly the ordinance in question here establishes no guidelines for the Board of Adjustment to determine when a permit should be issued for an otherwise prohibited use.

Also in *Commercial Properties, Inc. v. Peternel*, 418 Pa. 304, 211 A.2d 514 [1965] the Court held that certain and definite standards for zoning must be prescribed in a zoning ordinance. The lack of definite criteria upon which the board based its decisions vitiated the entire requirement of approval of the zoning board.

Likewise, *In re O'Hara's Appeal*, 389 Pa. 35, 131 A.2d 587 [1957] involving the appeal from the denial of a special exception by the zoning board, the court reversed the board. In so ruling the court stated that an ordinance must establish a standard to operate uniformly and govern its administration in all cases, and not leave its interpretation and administration to the unbridled discretion of a municipal legislative body or administrative officer.

See Annot: *Supreme Court's Application of Vagueness Doctrine to Non-Criminal Statutes or Ordinances*. 40 L.Ed.2d 823 [1975].

It is, therefore, the lack of any measurable standards by which a Board of Adjustment would be governed in either granting or enforcing a permit allowing the continuance of a prohibited use which is fatal to this ordinance.

Also, the very terms of Sec. 201, "Prohibited Uses" and Sec. 1300(3) "Uses Prohibited", contain no standards to determine when the emission of smoke, dust, noise or vibrations become "noxious or injurious" so as to be prohibited. Penntech could never know when it is in

violation of the ordinance because there is no means of determining that under the language of the ordinance.

We must note also an internal inconsistency in the ordinance. Section 201, "Prohibited Uses", Subsection 1, flatly prohibits certain uses, thus contradicting Section 1300(3) which allows the Board to permit these same violations without the guidance of any standards by which such permits should be granted.

Another question exists as to whether either Section 201(1), or Section 1300(3), could ever be enforced against the defendant Penntech. The evidence has established that Penntech's or its predecessor's operations as a paper mill long antedated the adoption of this ordinance. Similarly, the operation of woodchipping was conducted on the premises prior to the adoption of this ordinance, although in another location more remote from the plaintiffs' residence. Only the relocation of the woodchipping facilities in an existing building across the highway from plaintiffs' residence in 1965 that brought this matter before the Pennsylvania courts and ultimately before this court. Section 202, Non-Conforming Uses, Subsection 2, Continuation, provides as follows:

"A. Any unlawful use of a structure or land existing at the effective date of this Ordinance, may be continued although such use does not conform to the provisions of this Ordinance."

Strictly speaking, the use by Penntech of this woodchipping facility is not a non-conforming use in the sense that it is a use excluded from this zone by the provisions of the Zoning Ordinance. It is rather a permitted use in an industrial district, but it is a use which antedated the adoption of the ordinance. We believe, therefore, that in no sense can either the conditions of the special permit granted or the terms of the zoning ordinance regarding prohibited uses be enforced against Penntech under this ordinance. At all times the plaintiffs have a right to proceed at common law in the state courts for the abatement of any nuisance allegedly created by Penntech.

We, therefore, find that neither the provisions of the zoning ordinance alleged to be violated, nor the provisions of the special permit at issue here, could be enforced by the Borough or any of the individual defendants against Penntech, and that, therefore, the motion to dismiss must be granted.