## Denny Building Corporation Appeal.

312

Argued November 21, 1956. Before Stern, C. J., Jones, Bell, Chidsey and Musmanno, JJ.

*Marcus Manoff,* with him *Dilworth, Paxson, Kalish & Green,* for appellant.

*Levy Anderson,* First Deputy City Solicitor, with him *David E. Pinsky,* Assistant City Solicitor and, *David Berger,* City Solicitor, for City of Philadelphia, intervening appellant.

*Daniel Sherman,* with him *Walter W. Rabin,* for appellee.

OPINION BY MR. CHIEF JUSTICE HORACE STERN, December 29, 1956:

This controversy concerns the duty of a corporation, building a number of dwelling houses in Philadelphia, to equip them with leaders (gutters and downspouts) for conducting water from the roofs, in accordance with applicable provisions of law, and the question whether the Board of License and Inspection Review can relieve it from the performance of that duty.

The Denny Building Corporation entered upon a building operation involving the erection of some 450 detached dwelling houses on a 102-acre tract of land east of the Roosevelt Boulevard between Woodhaven and Comley Roads, each of the lots containing approximately 6,000 square feet, and each house occupying approximately 14% of its lot. All of them were built without basements or cellars, a concrete slab, four inches thick, forming the lowermost floor. The roofs pitch in two directions, each portion having an over-

hang of approximately 2½ feet, but they are not provided with metallic rain conductors along the eaves nor are there any downspouts to conduct the rain water from the roofs to the ground and into the sewer.

During the course of construction Denny made application to the Department of Licenses and Inspections for final plumbing certificates covering the houses the erection of which had been completed, but the Department ruled that it would not grant such certificates unless gutters, downspouts and underground pipes to the street were provided. Denny then appealed to the Board of License and Inspection Review, which is a departmental board in the Department of Licenses and Inspections (Philadelphia Home Rule Charter 3-100[f]). The Board, after a hearing and a re-hearing, reversed the decision of the Department and directed it to grant the relief requested. At the re-hearing some of the owners and occupants of the houses had appeared and testified to the adverse effects of the failure to channel the drainage of the rain water from the roofs, and, upon an appeal being taken to the court below by the Brotherhood of Master Plumbers of Philadelphia, they and other owners and residents were granted permission by the court to intervene in the action; Denny also was allowed to intervene. The court, in a comprehensive opinion by Judge CARROLL, reversed the decision of the Board and Denny thereupon took the present appeal to this court. A petition of the City of Philadelphia to intervene as an appellant has been granted.

The Act of June 7, 1911, P. L. 680, prescribes certain requirements for the construction of plumbing and house drainage in cities of the first class. Section 20 of the Act provides that "All buildings shall be kept provided with proper metallic leaders, for conducting

water from the roofs in such manner as shall protect the walls and foundations of said building from injury. In no case shall the water from said leaders be allowed to flow upon the sidewalk, but the same shall be conducted by a pipe or pipes to the sewer. If there be no sewer in the street upon which such buildings front, then the water from said leaders shall be conducted, by proper pipe or pipes below the surface of the sidewalk, to the street gutter." Section 71 of the Act provides that "The Department or Board or Bureau of Health shall have power to make such rules, regulations, and changes in the foregoing specifications relative to the construction of the plumbing or house drainage as said department, board, or bureau may, from time to time, determine to be necessary or advisable for the better protection of the safety or health of the occupants of any house, or the community." Acting under the authority of this Section the Board of Health, in 1929, issued certain rules and regulations, Rule 90 of which follows, word for word, the provision of Section 20 of the Act. By Section 8 of the Act of July 2, 1935, P. L. 561, Section 71 of the Act was amended so as to substitute a Board of Plumbing Supervision of the Department of Health for the Department or Board or Bureau of Health as the grantee of the rule-making power therein granted. This Board of Plumbing Supervision was abolished by Section A-100(c) of the Home Rule Charter and its powers and duties transferred by Section A-101(1) to the Department of Licenses and Inspections.

The question arises, therefore, whether, in view of the foregoing legislation, the Board of License and Inspection Review had the power or authority to absolve Denny from the duty of compliance therewith. That Section 20 of the Act of 1911, and Rule 90 of the so-

called Plumbing Code as adopted by the Board of Health, clearly impose that duty, there can be no doubt. The Section, and the Rule synonymous with it, are wholly unequivocal and mandatory. The words "in such manner as shall protect the walls and foundations of said building from injury" obviously do not mean that leaders are to be provided for conducting water from the roofs only if and when necessary to protect the walls and foundations thereby from injury; there are many other purposes to be served by such leaders, as is evident from the ill effects otherwise resulting to the occupants of the houses as testified to by them. The absolute requirement is that all buildings must be provided with leaders, and they must be such as will conduct the water from the roofs in a manner that will give protection to the walls and foundations. However, appellants argue that the Board had the discretionary power to decree, as it did, that the Department of Licenses and Inspections should consider this requirement of the law as changed in the case of this particular building operation. This alleged power is asserted to exist for any of four possible reasons:

(1) It is claimed that such a power is conferred by Section 71 of the Act of 1911 above quoted, a power which has now been transferred to the Department of Licenses and Inspections. It is to be noted, however, that the power granted by that Section to make rules, regulations and changes in the provisions of the Act is limited to such rules, regulations and changes as the Board may determine "to be necessary or advisable for the better protection of the safety or health of the occupants of any house, or the community." By no stretch of the imagination can it be conceived, nor indeed is it apparently argued, that the absolution of Denny from the requirement to construct gutters and

downspouts and to prevent the overflow of the sidewalk was, or could have been, intended for the better protection of the safety or health of the occupants of any house, or the community. On the contrary, it was stated by the Chairman of the Board at the re-hearing that "Of course, it is perfectly obvious to everybody sitting in this room that it would be helpful to the residents of these houses if they had rain conductors and downspouts. Everybody knows that is true." The Act of 1911 and the Plumbing Code adopted in pursuance of it contain a great number of mandatory provisions concerning soil pipes, drains, toilets, piping, bathtubs, and the like, and it is clear that what was intended by Section 71 was to grant a power to make rules, regulations and changes concerning all such matters only when regarded as necessary or advisable in order to secure *additional* protection of the safety or health of the occupants of the house,—not arbitrarily to dispense with the requirements specified in the Act and the Code in a case where, if such safety or health is involved at all, it is admittedly being given less, not better protection.

(2) It is claimed that the alleged authority results from Section 5-1005 of the Home Rule Charter, which grants to the Board of License and Inspection Review the power to affirm, modify, reverse, vacate or revoke the order from which an appeal was taken to it. It is of course true that, in the exercise of this appellate power, the Board may grant a right which the Department of Licenses and Inspections itself could have granted but denied. Since, however, the Department had no power to grant the variance here claimed, certainly the Board, merely exercising an appellate jurisdiction, had no such power. In that connection it is of interest to note that in Section 5-1006 of the Char-

ter, the Zoning Board of Adjustment, which is also an appellate tribunal, is expressly authorized, upon appeal, to grant variances under certain special conditions, whereas no such authority is granted to the Board of License and Inspection Review in the immediately preceding Section 5-1005.

(3) It is claimed that the alleged power is derived from the fact that Section 8.5 of the Housing Code adopted by Ordinance of August 5, 1954 (Section 7-205(e) of the Code of General Ordinances of the City of Philadelphia), provides that every plumbing fixture should be properly installed and maintained in accordance with the Plumbing Code, from which it is argued that this practically incorporates Section 20 of the Act of 1911 into the Housing Code and thereby makes applicable to the present case Section 15.4 of the Housing Code (Section 7-504(4) of the City Code), which provides that "The Board may modify any notice so as to authorize a variance from the terms of this Title, when, because of special conditions, undue hardship would result from literal enforcement, and when such variance substantially meets the spirit of it." Apart from the somewhat tortuous argument that, since the Board is thus given power to grant variances under the Housing Code, it can also, by reason of such alleged incorporation, grant variances from the Act of 1911 and the Plumbing Code, it is obvious that, even if this were so, it adds nothing to the situation, it being sufficient to point out that there is no basis in the present case for any claim of "undue hardship" within the legal meaning of that term. It is well settled that where the only "hardship" is one of pecuniary expense, such as that which Denny might here sustain, a variance cannot be granted.

(4)    It is claimed that the alleged power is derived from Section 2905 of the Building Code adopted by Ordinance effective May 9, 1949 (Section 4-2306 of the City Code), which provides, in harmony with the Act of 1911 and the Plumbing Code, that "All buildings shall be provided with proper metallic leaders for conducting water from the roof to the ground or sewer in such manner as shall protect the walls and foundations from damage, and in all buildings over 50 feet in height such leaders shall be installed inside the walls or buildings, provided that the Department may, in exceptional occupancies, waive this requirement." But apart from the fact that the right of waiver thus given apparently relates only to the requirement of installation inside the walls in buildings over 50 feet in height and therefore does not apply here, the limitation of the right to "exceptional occupancies," without standards of determination of such occupancies, makes it incapable of application; moreover there is no "exceptional occupancy" involved in the present case.

Having thus shown that none of the statutory provisions relied upon by appellants vests the Board of License and Inspection Review with power to grant a variance such as here claimed, it becomes unnecessary to consider whether the court below was justified in concluding that, even if such discretionary power existed, the Board abused the discretion.    It may, however, be pointed out that the occupants of the houses testified that, due to the lack of proper drainage contemplated by the law, large gullies and pools or puddles of stagnant water were constantly formed by the dropping of rain water from the eaves; that in the winter the snow lay on the roofs and after melting formed icicles, which, falling, had hurt some of the children; that the rain water overflowed the sidewalk

and driveways; that when the occupants entered or left their houses during a rain they were often subjected to a deluge from the roof in front of their doors; and that their health had been occasionally affected by these objectionable conditions. Since the main purpose of the requirement of gutters and rain-water conductors is presumably to protect against the conditions and effects of inclement weather, such protection, according to their testimony, was not afforded to the occupants of these houses. The Board apparently gave no attention to this testimony but based its decision on evidence of "experts" to the effect that the overhang of the roofs was as satisfactory an arrangement as gutters and downspouts would have been. However, as previously stated, it is not necessary to pass judgment upon this question.

Appellants contend, themselves intervenors, that the owners and occupants of the houses had no right to intervene in the proceedings in the court below and to be parties, appellees, on this appeal. Pa. R. C. P. 2327(3) permits intervention, at any time during the pendency of an action, of any person who could have joined or been joined as an original party in the action. Section 5-1005 of the Home Rule Charter provides that the Board of License and Inspection Review should provide an appeal procedure whereby *any person aggrieved* by the issuance or refusal of any City license or any order or other action as a result of any City inspection, *affecting him directly,* shall be afforded a hearing by the Board. The annotation to this section states that the purpose is to afford citizens, adversely affected by the exercise of licensing and inspection powers vested in City agencies, an orderly procedure, in conformity with due process, for the review of action taken against them. No one could be more "ag-

grieved" by the action of the Board in this case or more "directly affected" thereby than the owners and occupants of these houses, and, while the entire public is concerned as far as the overflow of the sidewalk is involved, these individuals have an obvious special interest apart from that of the general public which would certainly have justified their joining as original parties in the action for aid in enjoining a continuing infraction of the law; (cf. *Phillips v. Griffiths,* 366 Pa. 468, 471, 77 A. 2d 375, 377; *Huebner v. Philadelphia Savings Fund Society,* 127 Pa. Superior Ct. 28, 33, 192 A. 139, 141). The court therefore properly allowed them to intervene. Although they bought their houses from Denny and have no right *under their agreements of purchase* to compel Denny to install the gutters and rain conductors, they did have a right to assume that Denny would comply with all mandates of the law necessary to obtain final plumbing certificates, and, as owners and occupants of the houses, a right to resort to the court for enforcement of those mandates, since Denny's non-compliance therewith peculiarly and specially affects them.

Order affirmed.