H. A. Steen Industries, Inc. *v.* Cavanaugh,
Appellant.

Argued December 1, 1967. Before MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

reargument refused May 31, 1968.

*Matthew W. Bullock, Jr.,* Second Deputy City Solicitor, with him *Nicholas D'Alessandro* and *Frank J. Pfizenmayer,* Assistant City Solicitors, and *Edward G. Bauer, Jr.,* City Solicitor, for appellant.

*Edward R. Becker,* with him *Becker & Becker,* for appellee.

OPINION BY MR. JUSTICE EAGEN, April 24, 1968:

This is an action of mandamus. Plaintiff asks that the Philadelphia Commissioner of Licenses and Inspections (hereinafter Commissioner) be ordered to issue two sign permits which the Philadelphia Board of Licenses and Inspections Review (hereinafter Board) has ordered the Department of Licenses and Inspections (hereinafter Department) to issue. The Commissioner refuses to issue the permits on the basis of an opinion by the City Solicitor that the Board's decision is contrary to law. The court below ordered the Commissioner to issue the permits and this is his appeal from that order.

The permits sought are for two advertising signs located 125 feet from the south side of Roosevelt Boulevard in a district zoned industrial. Under the Philadelphia Zoning Ordinance, advertising signs are a permissible use in an industrial district. Section 14-2003 of The Philadelphia Code, however, provides: "(2) No person shall erect or maintain any sign . . . within 200 feet of any boundary line of Roosevelt Boulevard . . . which is visible from any point within the boundaries of such areas unless he has first obtained a permit to do so from the Department of Licenses and Inspections. (3) No permit to erect or maintain any sign in the above area shall be granted unless the sign for which such permit is sought: (a) complies in every respect with all other applicable requirements of this Code and with the regulations of the Fairmount Park Commission; (b) has been approved by the Art Commission."

Plaintiff erected the two signs in August of 1960 after obtaining zoning and use permits from the Department, but without obtaining approval either of the Art Commission or of the Fairmount Park Commission. When this was discovered, plaintiff was requested to seek the necessary approvals. Plaintiff then sought approval of the Art Commission which determined that the signs are aesthetically unacceptable and disapproved them. Thereupon plaintiff instituted a complaint in equity, requesting the court to restrain the city from interfering with the signs and to order it to issue the sign permits. On preliminary objections, the court ruled that plaintiff had not exhausted its administrative remedies and accordingly dismissed the complaint.

Plaintiff then reapplied to the Art Commission which, after a hearing, again disapproved the signs. This decision was appealed to the Board which ordered

the Department to issue the permits. The Commissioner refused to issue the permits on the ground—later reaffirmed in an opinion of the City Solicitor to the Board—that the Board's decision was illegal since approval of the Fairmount Park Commission had not been obtained. Plaintiff then requested the approval of the Fairmount Park Commission which disapproved the signs because they do not comply with Fairmount Park Regulation 14-2003 (3) which provides: "Billboards: Approval for the erection, alteration, use, location and display of billboards will be granted provided they are to be unilluminated and not more than twelve by twenty-five feet in size, *are set back not less than one hundred fifty feet from the said boundary lines* and upon any individual lot of ground are not less than fifty feet apart." (Emphasis added.) This decision also was appealed to the Board which again ordered that the sign permits be issued. The Commissioner again refused to issue the permits on the ground that, in the opinion of the City Solicitor, the Board's decision is contrary to law. Thereupon the plaintiff instituted this action of mandamus.

The court below found it unnecessary to consider whether or not the Board was correct in its decision. As framed by the court below, the issue determinative of this case is whether or not the city must obey the Board's unappealed decision or whether it may, "by the simple expedient of a Law Department memorandum, circumvent an order of a quasi judicial agency of the city when acting in its judicial capacity." Citing *Merchants' Warehouse Co. v. Gelder*, 349 Pa. 1, 36 A. 2d 444 (1944), the court concluded that the city is bound by the decision of the Board, regardless of its correctness.

Admittedly the present case is similar in many respects to *Merchants' Warehouse Co.* In that case a

14

contractor had filed a claim against the Commonwealth with the State Auditor General and the State Treasurer who were empowered by the legislature to adjust and settle such claims. The contractor won an award, but the State Attorney General advised the agency against which the claim was made that it should not be paid. In that case, as in this, every governmental officer, department, board or commission had the duty to refer legal questions to the law officer and to follow his advice.[1] This Court held, however, that this state provision did not apply because the Auditor General and the State Treasurer were acting in a judicial—not an

[1] The Act of April 9, 1929, P. L. 177, §512, 71 P.S. §192 provides: "Whenever any department, board, commission or officer of the State Government, shall require legal advice concerning its conduct or operation, or when any legal difficulty or dispute arises, or litigation is commenced or to be commenced in which any department, board, commission or officer is concerned, or whenever any taxes or other accounts of any kind whatever due the Commonwealth remain overdue and unpaid for a period of ninety days, it shall be the duty of such department, board, commission or officer to refer the same to the Department of Justice.

"It shall be the duty of any department, board, commission or officer, having requested and received legal advice from the Department of Justice regarding the official duty of such department, board, commission, or officer to follow the same, and, when any officer shall follow the advice given him by the Department of Justice, he shall not be in any way liable for so doing, upon his official bond or otherwise."

Section 8-410 of the Philadelphia Home Rule Charter provides: "Whenever any officer, department, board or commission shall require legal advice concerning his or its official business or whenever any legal question or dispute arises or litigation is commenced or to be commenced in which any officer, department, board or commission is officially concerned . . . it shall be the duty of such officer, department, board or commission to refer the same to the Law Department.

"It shall be the duty of any officer, department, board or commission having requested and received legal advice from the Law Department regarding his or its official duty, to follow the same. . . ."

executive or administrative—capacity. Their decision
as a court established by the legislature under Article
V, §1 of the Pennsylvania Constitution was not bound
by the opinion of the Attorney General. Once their
independent decision was made, it had the effect of a
judgment and the state agency was directed to pay the
claim in accordance with it.

*Merchants' Warehouse Co.* is different from this case
in this crucial respect: the Board in this case does not
exercise judicial power as it was exercised by the Au-
ditor General and State Treasurer in *Merchants' Ware-
house Co.* The Auditor General and State Treasurer
were granted judicial power by the state legislature.
They constituted a court under Pennsylvania Consti-
tution Article V, §1. On the other hand, the Board
derives its power from the First Class City Home Rule
Act of April 21, 1949, P. L. 665, 53 P.S. §13101 et seq.
That enabling legislation provides: "Subject to the
limitations hereinafter prescribed, the city taking ad-
vantage of this act . . . shall have complete powers
of *legislation and administration* in relation to its
municipal functions." 53 P.S. §13131 (Emphasis
added.) Clearly judicial power under Pennsylvania
Constitution Article V, §1 is absent from this legisla-
tive grant. Moreover, the Philadelphia Home Rule
Charter, adopted pursuant to the First Class City
Home Rule Act, clearly does not purport to grant the
Board a court's power to independently make decisions
on matters of law. Section 3-100 of the Charter pro-
vides: "The *executive and administrative* work of the
City shall be performed by: . . . (f) The following de-
partmental boards and commissions, which are either
created or placed, as the case may be, in the respec-
tive departments as follows: . . . In the Department of
Licenses and Inspections . . . Board of License and
Inspection Review." (Emphasis added.) The Charter

clearly provides that with reference to legal matters the position of the City Solicitor binds "officers, department, *board* or commission."[2] Thus, as a municipal agency whose function is defined by the Philadelphia Home Rule Charter, the Board is granted only executive and administrative powers and is required to apply the law as it is determined by the City Solicitor. Nowhere does it appear that the Board is empowered to make binding determinations of law. Consequently in treating the Board's decision as binding, regardless of its correctness, the lower court erred.

Although *Merchants' Warehouse Co.* is not controlling, we agree with the lower court that the Board's order may be enforced by mandamus, *Herskovits v. Irwin,* 299 Pa. 155, 149 A. 195 (1930). Mandamus is proper, however, only if the order does not exceed the Board's jurisdiction and is not based on a mistake of law or an abuse of discretion. *Hotel Casey Co. v. Ross,* 343 Pa. 573, 23 A. 2d 737 (1942); *Tanenbaum v. D'Ascenzo,* 356 Pa. 260, 51 A. 2d 757 (1947). See generally, Reader, Judicial Review of "Final" Administrative Decisions in Pennsylvania, 67 Dick. L. Rev. 1, 8-22 (1962).

The city submits that the Board exceeded its jurisdiction in ordering the Department to issue permits for signs set back only 125 feet from Roosevelt Boulevard because Fairmount Park Regulation 14-2003 (3)(a) requires a 150 foot setback. To support this position, the city cites *Denny Building Corporation Appeal,* 387 Pa. 311, 127 A. 2d 724 (1956). In *Denny* this Court held that the Board did not have appellate power to grant a variance from plumbing and drainage requirements of the Act of June 7, 1911, P. L. 680, §20, 53 P.S. §14808 and Rule 90 of the Philadelphia Plumbing Code where the Department, whose refusal

---

[2] Section 8-410, supra note 1.

of a permit was being appealed had no such power. Id. at 317-318, 127 A. 2d at 728. Since in this case the Department similarly has no power to issue a permit unless the sign "complies in every respect . . . with the regulations of the Fairmount Park Commission," Philadelphia Code §14-2003, the city reasons that the Board which reviews the Department's action also lacks the power.

Plaintiff argues that *Denny* is not controlling because the Board's lack of power to grant variances from a state statute or a municipal code does not mean that it lacks power to grant variances from a regulation. Moreover, plaintiff points out that although the Department itself could not have authorized these signs, the Fairmount Park Commission could change its regulation. If the appellate power of the Board is co-extensive with the power of the Fairmount Park Commission, then the Board could grant the variances.

The points plaintiff suggests are not significant. Fundamentally, the power to grant a variance, whether it be from a statute or from a code or from a regulation, is a legislative power.[3] Nowhere does it appear that such power has been delegated to the Board.[4] Section 5-1005 of the Charter does give the Board power to "affirm, modify, reverse, vacate or revoke the action from which the appeal was taken to it." As this Court noted in *Denny,* however, when this language is compared with other provisions of the Charter which

---

[3] Because it is a legislative power, zoning ordinances must contain standards to control its exercise by administrative boards, e.g., *Norate Corp., Inc. v. Zoning Board of Adjustment,* 417 Pa. 397, 403-04, 207 A. 2d 890, 893-94 (1965), in order not to illegally delegate legislative power. Compare pp. 8-9 infra.

[4] Nor could it be delegated without standards to control its exercise.

expressly confer the power to grant variances,[5] it cannot be fairly interpreted to mean that the Board has power to grant variances generally. Moreover, the regulation itself does not authorize variances from its requirements. Consequently, we agree with the city that the Board's order is an unauthorized exercise of power, and thus is unenforceable by mandamus.

Plaintiff submits that the Board's order does not exceed its jurisdiction because the Fairmount Park Regulations are void since they represent an unconstitutional exercise of legislative power by the Fairmount Park Commission. The city's response is that the principle prohibiting a municipality from delegating legislative power to an administrative agency is inapplicable because §14-2003(3)(a) of The Philadelphia Code adopts or incorporates by reference the Fairmount Park Regulation under which the plaintiff's signs were disapproved, thereby making that Regulation the city council's own act of legislation.

The principle is well-established that a municipality may not delegate legislative power to an administrative agency, e.g., *Saccone v. Scranton,* 341 Pa. 526, 20 A. 2d 236 (1941) and *American Baseball Club v. Philadelphia,* 312 Pa. 311, 167 A. 891 (1933), although a municipality may delegate to such an agency the duty to determine whether the facts exist to which an enactment applies, *Gima v. Hudson Coal Co.,* 310 Pa. 480, 165 A. 850 (1933) (per curiam), and the duty to effectuate the terms, purpose or policy of an enactment if definite standards delimit the agency's power. *Holgate Bros. v. Bashore,* 331 Pa. 255, 200 A. 672 (1938). See generally 2 McQuillin, Municipal Corporations

---

[5] E.g., Philadelphia Home Rule Charter §5-1006 with respect to the zoning board of adjustment's power to grant variances. Compare Philadelphia Housing Code §15.4 with respect to the Board's power to grant variances from that Code.

§10.40 et seq. (3d ed. 1966); Rhyne, Municipal Law §§4-10 and 27-8 (1957). It is also established that the adoption of an *existing* regulation rather than the adoption of a regulation to be made *in futuro* does not involve a delegation of legislative authority. See generally, Mermin, "Cooperative Federalism" Again: State and Municipal Legislation Penalizing Violation of Existing and Future Federal Requirements: I, 57 Yale L. J. 1, 8-9 (1947). Moreover, this Court has held that a party has no standing to attack the constitutionality of an *in futuro* adoption if there has been no change in the adopted requirements between the time of adoption and the time of application to him. *Commonwealth v. Alderman,* 275 Pa. 483, 487, 119 A. 551, 553 (1923).

Since Fairmount Park Regulation 14-2003 (3) (a) existed at the time of the enactment of Philadelphia Code §14-2003, we hold that the adoption by the Code of that regulation did not constitute an unlawful delegation of legislative authority. Moreover, although neither party has raised the question of whether Pennsylvania Constitution Art. III, §6 prohibits a municipal enactment from employing incorporation by reference, we hold that it does not.[6] *Philadelphia v. Houlihan,* 37 Pa. D. & C. 29 (Philadelphia County 1940). Cf. *Baldwin v. Philadelphia,* 99 Pa. 164 (1881). Finally we hold that the plaintiff has no standing to raise the constitutional question of invalid delegation which would be presented if this regulation had not existed when the Code was enacted and had been applied to deprive it of the licenses it seeks.

Plaintiff submits that §14-2003 of The Philadelphia Code is unconstitutionally vague. This position is

---

[6] Any contrary implication in *Norristown v. Norristown Passenger Ry. Co.,* 148 Pa. 87, 23 A. 1062 (1892) (per curiam) is disapproved.

without merit. With the regulation incorporated by reference, the ordinance plainly prohibits plaintiff's signs, which are set back from Roosevelt Boulevard less than the required 150 feet.

Plaintiff submits that §14-2003 of The Philadelphia Code regulates private property solely for aesthetic purposes and therefore is a deprivation of property, in violation of the due process clauses of the state and federal constitutions, and not a legitimate exercise of the police power. The question of whether regulation of private property for aesthetic purposes is within the police power has been discussed at length elsewhere. E.g., Rhyne, Municipal Law §26-4 (1957); 7 McQuillin, Municipal Corporations §24.382 (3d ed. 1949); 16 Am. Jur. 2d, Constitutional Law §292 (1964); Annot. 58 A.L.R. 2d 1314, 1327-1330 (1958). In the past this Court has ruled that aesthetic considerations alone do not justify police regulation. E.g., *Norate Corp., Inc. v. Zoning Board of Adjustment,* 417 Pa. 397, 406 n. 8, 207 A. 2d 890, 895 n. 8 (1965); *Rogalski v. Upper Chichester Twp.,* 406 Pa. 550, 178 A. 2d 712 (1962); *Medinger Appeal,* 377 Pa. 217, 222, 104 A. 2d 118, 121 (1954); *White's Appeal,* 287 Pa. 259, 266, 134 A. 409, 412 (1926). The vitality of this position under both the federal and state constitutions has been challenged here, but the question need not be reached.

It is elementary that a law or legislative enactment is presumed to be constitutional and the party who asserts that such is unconstitutional has the burden of proof. E.g., *Anstine v. Zoning Board of Adjustment,* 411 Pa. 33, 190 A. 2d 712 (1963); *Hadley's Case,* 336 Pa. 100, 6 A. 2d 874 (1939). We are unpersuaded that the challenged ordinance regulates private property solely for aesthetic purposes. For instance, the prohibition of signs within 150 feet of Roosevelt Boule-

vard, one of the most highly used highways in the City of Philadelphia, may be intended to prevent the distraction of drivers and the obstruction of their view, thereby promoting safety. We are unpersuaded that this regulation is an unreasonble means to accomplish this or other goals within the police power. The ordinance is not unreasonable on its face and the stipulations on which this case was tried do not present grounds on which we can find the ordinance unreasonable. In short, the plaintiff has not satisfied its burden of proof.

Plaintiff submits that the Fairmount Park Commission disapproved the signs partly because of a policy against signs unassociated with the site and argues that such a policy is invalid as an attempt to enact a zoning ordinance without a comprehensive plan. Since plaintiff's signs do not conform with a valid regulation, it is unimportant that the signs were disapproved for an additional reason which may or may not be valid.

Reversed.

Mr. Justice MUSMANNO and Mr. Justice ROBERTS dissent.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.