**Sheneman v. Commonwealth
ex rel. Depuy**

*Malcolm W. Berkowitz,* for plaintiffs.

*R. Joel Weiss,* Deputy Attorney General; *William C. Sennett,* Attorney General, for Commonwealth.

SHELLEY, J., October 14, 1969.—This is a proceeding in equity to have sections 2, 4, 5 and 6 of the Act of July 15, 1968, Act no. 162,[1] which amended The

---

[1] Section 2, 75 PS §625.1 p.p. provides as follows:

"A person operating a motorcycle shall ride only upon the permanent and regular seat attached thereto. Such operator shall not

Vehicle Code of April 29, 1959, P. L. 58, 75 PS §101, et seq., declared unconstitutional.

Plaintiffs have indicated that they are no longer

---

carry any other person nor shall any other person ride on a motorcycle, unless such motorcycle is designed to carry more than one person, in which event, a passenger may ride upon the permanent and regular seat if designed for two (2) persons, or upon another seat firmly attached to the motorcycle in a position to the rear or side of the motorcycle and provided with foot rests and hand grips, or in a side car attached to the motorcycle. Any person operating or riding on a motorcycle shall wear both protective headgear and if such person is not wearing eyeglasses, an eye shield of a type approved by the secretary."

Section 4, 75 PS §848, p.p. provides as follows:

"No person shall operate a motorcycle on the highways where the highest point on the handle bars on the motorcycle is more than fifteen (15) inches higher than the plane of the saddle or where it is equipped with clip-on-bars."

Section 4, 75 PS §849, p.p. also provides as follows:

"No person shall cut or alter a fender on a motorcycle after it has been sold by a manufacturer."

Section 5, 75 PS §1010, p.p., provides as follows:

"(a) The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard to the speed of such vehicle and the traffic upon and condition of the highway.

"(b) The operator of any motor bus, motorcycle, motor omnibus, commercial motor vehicle, truck tractor, or tractor, not being part of any military convoy in the military service of the United States or of this Commonwealth, when traveling upon a highway outside of a business or residence district shall not follow another such vehicle within five hundred (500) feet, but this shall not be construed to prevent one such vehicle overtaking and passing another such vehicle nor shall this section be construed to prevent operators of motorcycles traveling in groups of not more than four from following each other more closely than the five hundred (500) foot minimum following distance prescribed by this section."

Section 6, 75 PS §1010.1, p.p., provides as follows:

"Not more than two motorcycles shall be operated abreast of each other in any one lane of motor vehicular traffic."

pursuing their objection to section 5(a) and section 6 of the Act of 1968, supra.

Plaintiffs brought the action on their own behalf and on behalf of all other motorcycle riders in the Commonwealth of Pennsylvania and also as trustees ad litem of the motorcycle association as set forth in paragraph 1 of the complaint.

Defendants are Warner M. Depuy, Secretary of Revenue, Harry M. Brainerd, Commissioner of Traffic Safety, and Earl McKetta, Commissioner of State Police, all ex rel., the Commonwealth of Pennsylvania.

Plaintiffs initially filed a petition for declaratory judgment[2] asking that the above amending sections of The Vehicle Code, supra, be declared unconstitutional. By stipulation, the petition for declaratory judgment was withdrawn and the instant complaint in equity substituted therefor.

Two hearings were held, at which time both plaintiffs and defendants submitted relevant evidence in detail. Thereafter, at the request of counsel for plaintiffs, oral argument was heard by the chancellor.

It is elementary that a law or legislative enactment is presumed to be constitutional and the party who asserts that such is unconstitutional has the burden of proof: H. A. Steen Industries, Inc. v. Cavanaugh, 430 Pa. 10, 20 (1968). The long-established rule is that an act of assembly will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution and that all doubt is to be resolved in favor of sustaining the legislation: Milk Control Commission v. Battista, 413 Pa. 652, 659 (1964); appeal to the Supreme Court of the United States was dismissed in 379 U. S. 3 (1964).

Under well-established rules of construction, it is

---

[2] Entered in the Court of Common Pleas of Dauphin County to Commonwealth Docket, 1969, No. 44.

our duty to interpret a statute so as to render it constitutional if it is at all reasonable so to do: Commonwealth ex rel. Dermendzin v. Myers, 397 Pa. 607, 614 (1959).

Plaintiffs complain that section 4 of the Act of 1968, supra, which limits the height of motorcycle handles to 15 inches and which prohibits the alteration of a motorcycle fender as originally supplied by the manufacturer, is unconstitutional. This provision is essentially an equipment regulation. 7 Am. Jur. 2d 706, §149, states that, as a general rule, in the exercise of the police power the legislature of a State has the authority to require motor vehicles to be equipped with various items of safety equipment. The validity of statutes enacted pursuant to such power has generally been sustained where such statutes are definite and reasonable. The reasonableness of the requirement as to the height of handlebars is succinctly set forth in Bisenius v. Karns, 42 Wis. 2d 42, 47, 165 N. W. 2d 377, 380 (1969), where the court said:

"As to Sec. 347.486, Stats., regulating the position of the handlebars, the relatedness of the requirement to other users of the highway is likewise evident. The prohibition of tilted or elevated handlebars which lift hands, wrists and arms skyward is related to the necessity of having a motor-driven vehicle under proper management and control. In the split-second decisions that high speed driving calls for, such full control is related to preventing accidents and to the well-being of other users of the highway."

The provision of the act prohibiting the operators of motorcycles from cutting or altering the fenders of motorcycles is a reasonable regulation. The engineers and designers of the entire motorcycle for the manufacturers, in our opinion, are best qualified to determine the type and size of fenders to insure maximum

protection and safety of the motorcycle operators and other users of the highway.

Section 5(b) of the Act of 1968, supra (see footnote 1 as to the provision of section 5(b) ), places the operation of motorcycles in the same category as the operation of motor buses, motor omnibuses, commercial motor vehicles, truck tractors and tractors. This provision requiring 500-feet intervals between such vehicles is not an arbitrary regulation but one reasonably related to public safety. The legislature in section 5(b) has recognized that motorcycles in groups of up to four fill a lane of traffic in about the same relative manner as the other designated types of vehicles. The Supreme Court, in Commonwealth v. Funk, 323 Pa. 390 (1936), generally sets forth the law pertaining to the operation of motor vehicles upon the highways of Pennsylvania. The court in that case held that the legislature has plenary power over the highways of the State. In the exercise of its power to control and regulate the use of the highways, and under the inherent police power of the State, the legislature has the power to regulate the manner and circumstances under which, and by whom, automobiles may be operated upon the highways of the State. The privilege to operate a motor vehicle upon the highways is not embraced within the term civil rights, nor is a license to do so a contract or a right of property in any legal or constitutional sense. See also Commonwealth v. Halteman, 192 Pa. Superior Ct. 379 (1960). The requirement of section 5(b) of the Act of 1968, supra, serves a beneficial purpose. The provision creates 500-feet intervals and thus eliminates the danger incidental to operators of automobiles passing other moving vehicles on the highway.

The principal thrust of plaintiffs' complaint is directed to that part of section 2 of the Act of 1968, supra, which requires ". . . any person operating or

riding on a motorcycle shall wear both protective headgear and if such person is not wearing eyeglasses, an eye shield. . . ."

It is averred by plaintiffs that this prohibition of section 2 is unconstitutional for the following reasons:

1. The section violates the concept of State sovereignty.

2. The section violates the equal protection clause of the Fourteenth Amendment of the Federal Constitution[3] and article III, sec. 7, of the Constitution of Pennsylvania.[4]

3. The section is an unconstitutional exercise of the State's police powers.

4. The section is too vague and indefinite to inform the operators of motorcycles of what is required of them.

Plaintiffs' contention that section 2 of the Act of 1968, supra, violates the concept of State sovereignty is directed to the activity of the Federal government in the field of highway safety.

In response to the growing carnage on the Nation's highways, Congress in 1966 authorized the Federal government to initiate a major campaign to increase highway safety. Fundamental to this campaign was the Highway Safety Act[5] which established a three-

---

[3] Section 1 of Article XIV provides, in part, that "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

[4] Section 7 of article III provides:

"No local or special bill shall be passed unless notice of the intention to apply therefor shall have been published in the locality where the matter or the thing to be effected may be situated, which notice shall be at least thirty days prior to the introduction into the General Assembly of such bill and in the manner to be provided by law; the evidence of such notice having been published, shall be exhibited in the General Assembly, before such act shall be passed."

[5] Highway Safety Act of September 9, 1966, 80 Stat. 731, 23 U.S.C.A. §401-404 (Supp., 1967).

year Federal highway safety program and required the formation of similar programs on the State level. To encourage State participation, Congress provided that failure by any State to implement such an approved program by December 31, 1968, would terminate all Federal funds for the program and reduce the State's Federal highway appropriation by 10 percent. The National Highway Safety Bureau was charged with implementing the highway safety program.[6] One of the bureau's initial proposals was to make the wearing of protective helmets by motorcycle riders mandatory. This proposal was incorporated by Congress into its formulation of National Uniform Standards for Highway Safety Programs.[7] The concern for safety in conjunction with the threatened loss of highway funds was evidently sufficient to induce the Commonwealth of Pennsylvania to act on these recommendations.[8]

This history outlining the action of the Federal government, in our opinion, does not justify plaintiffs' contention that section 2 of the Act of 1968, supra, violates the concept of State sovereignty.

Plaintiffs complain that section 2 of the Act of 1968 (a) violates the equal protection clause of the Fourteenth Amendment of the Federal Constitution and article 3, sec. 7, of the Pennsylvania Constitution, and (b) is an unconstitutional exercise of the police power.

Plaintiffs in their brief and on oral argument have

_____

[6] 80 Stat. 727, 15 U.S.C.A. §1404 (Supp. 1967).

[7] H.R. Doc. No. 138, 90th Cong., 1st Sess. 2-3 (1967) states: "The program shall provide as a minimum that: each motorcycle operator wears an approved safety helmet . . . [e]ach motorcycle passenger wears an approved safety helmet . . ."

[8] This paragraph was taken verbatim from a learned and well-documented article on the Constitutionality of Mandatory Motorcycle Helmet Legislation, which appeared in volume 73 Dickinson Law Review, on page 100.

limited their complaints as to the Fourteenth Amendment of the Federal Constitution to the equal protection clause, which provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws," and to sec. 7 of art. III, of the Pennsylvania Constitution, which similarly prohibits class or special legislation.

It must be conceded that the Act of 1968, supra, classifies operators of motorcycles differently than operators of other motor vehicles as to the wearing of protective headgear and eye shields. For class legislation to be constitutional, the classification must be reasonable, necessary and founded upon a like distinction, and when an attack is made upon legislative classification, the court's only inquiry is to determine whether the classification is patently arbitrary and utterly lacking in rational justification: Commonwealth v. Giaccio, 415 Pa. 139 (1964). In other words, the classification must not be arbitrary but must be based upon reasonable differences which bear a just and proper relation to the attempted classification: Department of Labor and Industry v. New Enterprise Rural Electric Cooperative, Inc., 352 Pa. 413 (1945).

It was held in Maurer v. Boardman, Secretary of Revenue, 45 Dauph. 341 (1938), affirmed by the Supreme Court of Pennsylvania in 336 Pa. 17 (1939), and by the United States Supreme Court in 309 U. S. 598 (1940), that section 1033(c), added to The Vehicle Code of 1929 by the Act of June 29, 1937, P. L. 2329,[9] which prohibited operators of motor trucks from carrying automobiles above the cab of the truck occu-

---

[9] Section 1033(c) of the Act of June 29, 1937, P.L. 2329, provided that "no person shall operate a vehicle on the highways of this Commonwealth carrying any other vehicle, any part of which is above the cab of the carrier vehicle or over the head of the operator of such carrier vehicle."

pied by the operator, but did not prohibit the carrying of any other type of cargo in a similar position, was not an unreasonable classification of operators of motor trucks.

The court said in Maurer, supra, speaking through Mr. Justice Barnes, on page 26 that:

"[T]here is no merit in the plaintiffs' contention that the act here assailed denies to them the equal protection of the laws and constitutes special legislation. This is based upon the charge that equipment of the type operated by them is discriminated against in favor of other types whereby part of the cargo is carried over the cab. Plaintiffs sought to establish by photographic evidence that trucks operate upon the highways of the state with portions of their cargoes extended over the head of the operator of the truck.

"Here the evil sought to be prevented is the practice of carrying an automobile over the cab of a vehicle. The legislature by enacting Section 1033(c) has efficiently directed its effort toward the prohibition of that practice. That other persons in the trucking business may continue to engage in practices not prohibited by Section 1033(c), but equally and similarly dangerous, is not enough to render the Section in question unconstitutional, because the right of the legislature to classify with reference to the particular evil sought to be prevented is undoubted. An act designed to remedy an existing ill may not be declared invalid because it leaves other ills unremedied. It is not required that the entire field of possible abuses be covered."

Although section 1033(c), supra, was subsequently repealed, we nevertheless feel the doctrine set forth in the Maurer case is still the law in relation to the requirement that statutory classifications be reasonable.

We conclude that to require operators of motorcycles to wear protective headgear and eye shields is not an unreasonable classification considering the obvious and inherent difference between the operation of a motorcycle and the driving of other motor vehicles.

Plaintiffs contend that section 2 of the Act of 1968, supra, is an unconstitutional exercise of the police power of the Commonwealth.

The police power is a power inherent in every sovereignty to govern men and things, under which the legislature may, within constitutional limitations, not only prohibit all things harmful to the comfort, safety, and welfare of society, but also prescribe regulations to promote the public health, morals and safety, and add to the general public convenience, prosperity and welfare. It is the power to make all manner of wholesome and reasonable laws, as the legislature shall judge to be for the good and welfare of the Commonwealth and the people of the same, and under the police power, the State may enact statutes for the welfare and health of its citizens so long as such statutes do not invade fundamental liberties of its citizens. Laws which purport to be an exercise of the police power must not be unduly oppressive or patently beyond the necessities of the case, and the means which they employ must have a real and substantial relation to the objects sought to be attained: 7 P. L. Encyc. 187, §3. See also Treigle v. Acme Homestead Association, 297 U.S. 189 (1936); Panhandle Eastern Pipe Line Co. v. State Highway Commission, 294 U.S. 613 (1935); Best v. Zoning Board of Adjustment, 393 Pa. 106 (1958); Pennsylvania State Board of Pharmacy v. Pastor, 39 D. & C. 2d 641, 85 Dauph. 174, 177 (1966). The State may make any regulation necessary for the protection of life, limb or

property on its highways, provided only that the regulation does not capriciously or arbitrarily affect interstate commerce, discriminate against such traffic or violate fundamental rights guaranteed by the Constitution. The wisdom or policy of the form of regulation of the use of highways is for the legislature; inquiry by the courts is limited to the determination of the question whether the means of regulation chosen by the legislature are reasonably adapted to the end sought: Maurer v. Boardman, supra.

Where the validity of legislation is based upon the exercise of the police power of the State, the classification or distinction made in the exercise of that power must be based on some real and substantial basis which bears a reasonable and just relation to the object of the legislation; the constitutional guarantee of equal protection of the laws will be interposed against discriminations that are entirely arbitrary: Empire Box Corp. of Stroudsburg v. Chesnut, 54 D. & C. 162 (1945), affirmed per curiam by the Supreme Court in 352 Pa. 418 (1945).

Plaintiffs complain that section 2 of the Act of 1968, supra, is too vague and indefinite to inform motorcycle operators of what is required of them. Section 2 authorizes the Secretary of Revenue to approve the types of protective headgear and eye shields required to be worn by the operators and riders of motorcycles. The evidence reveals that the administrative regulations adopted by the Secretary of Revenue acting through the Bureau of Traffic Safety do, in fact, establish complete and specific standards for these protective devices. It appears from plaintiffs' brief on argument that their complaint is not that the section or the regulations adopted pursuant thereto are too vague, but rather that "the regulations promulgated under Act No. 162 [Act of 1968, supra] were never

published in any newspaper of general circulation or otherwise made known to the general public."

The Act of June 4, 1945, P. L. 1388, sec. 21, as amended, 71 PS §1710.21,[10] pertaining to the procedure for adopting administrative regulations, which was in effect at the time the rules were promulgated, provided as follows:

". . . Regulations adopted . . . shall have no effect until a copy thereof, certified by the executive officer, chairman or secretary of the agency, is filed in the Department of State . . . Copies of all regulations shall be made available by the adopting agency upon request."

The evidence reveals that the regulations promulgated by the Secretary of Revenue were duly reported to the Department of State as required by the Act of 1945, supra.

Therefore, we conclude that there is no merit to the allegation of plaintiffs that section 2 of the Act of 1968 is too vague and indefinite to inform motorcycle operators of what is required of them.

The constitutionality of statutes requiring the operators of motorcycles to wear protective headgear has been the subject of litigation in many States of the Union.[11] From this litigation has developed a majority and a minority view of the subject.[12]

---

[10] The provisions of the Act of 1945 have since been repealed and a different procedure has been promulgated by the Commonwealth Documents Law of July 31, 1968, Act no. 240, 45 PS §1101, et seq., which became effective July 1, 1969.

[11] Approximately 35 States have enacted statutes requiring that helmets be worn and 1 state has a law that requires helmets be carried on motorcycles as equipment but need not be worn.

[12] Similar acts requiring the wearing of helmets by motorcyclists have been held constitutional in Connecticut, Kansas, Louisiana, Massachusetts (certiorari denied 393 U.S. 999), Minnesota, New Jersey, New York, North Carolina, North Dakota, Rhode

There have been four principal arguments advanced in support of the statutory requirement for wearing helmets while either operating or riding as a passenger on motorcycles. These arguments are: (1) public welfare is endangered by the unhelmeted rider; (2) the direct benefit to others, especially other users of the highway; (3) the State's power to control highways; and (4) equipment regulation. There have been a like number of arguments opposing the required use of helmets. The argument of opponents fall generally into four categories, which are: (1) infringement of individual liberty; (2) legislative intent solely to protect the rider; (3) detrimental effect of helmet; and (4) statutes too vague and indefinite to be enforced. A detailed discussion with case authority supporting both the pro and con views are referred to in an article appearing in 73 Dickinson Law Review 100, on pages 106 through 114.

We do not find the minority view to be persuasive. We conclude that the Act of 1968, supra, bears a real and substantial relationship to highway safety generally and does not constitute an improper exercise of the police power,

---

Island, South Dakota, Texas and Wisconsin. Similar statutes have been held unconstitutional in Florida, Illinois, Michigan, Missouri and Washington. The lower courts of Pennsylvania are not in agreement as to the constitutionality of the helmet statute. In an appeal from a conviction for failure to wear a helmet as required by the Act of 1968, supra, the provision of the Act was held to be unconstitutional in Commonwealth v. Dan P. Arnold, May term, 1969, no. 56, Court of Common Pleas of Clearfield County, and the requirement of the act under similar circumstances was held to be constitutional in Commonwealth of Pennsylvania v. David Lance Molter, December term, 1968, no. S.A. #7, Court of Common Pleas of Delaware County. Neither case has yet been reported; however, the Commonwealth has taken an appeal to the Superior Court in the Arnold case, supra.

Accordingly, we enter the following

DECREE NISI

And now, October 14, 1969, plaintiffs' complaint in equity is dismissed. The prothonotary is directed to enter this decree nisi and to notify the parties of these proceedings or their counsel forthwith. If no exceptions are filed within 20 days after the entry of this decree nisi, a final decree will be entered as of course. Costs to be paid by plaintiffs.